NEAL v. SHINN.

1. CIRCUIT COURTS: *Statute enabling judge to open on third day of term. Election of special Judges.*

The statute found in sections 17, 18, chapter 50, of Gould's Digest, providing that if any Circuit Court shall not be held on the first day of the term, it shall stand adjourned from day to day until the evening of the third day, and if at that time the court shall not be opened, it shall stand adjourned until the next regular term, is not inconsistent with any provision of the Constitution of 1868 or 1874; and when, in the absence of the regular Judge, the attorneys in attendance on a court fail to exercise their privilege of electing a special Judge at 10 o'clock a. m. on the second day of a term, as provided for in section 11, article 7, of the Constitution, and the regular Judge does not appear, the court will stand adjourned until the next day, when he may lawfully assume the duties of the bench.

2. COUNTY SEATS: *Inducement to vote for removal of.*

The offer by persons interested in a town to build a court house and jail there, and donate them to the county in case the county seat should be changed to that town, is not the offer of a bribe to the electors, and will not invalidate an election at which such change is made.

3. SAME: *Contesting election for removing: Order on appeal.*

On appeal from the judgment of a County Court, sustaining the contest of an election at which a majority of votes were for removing a county seat, but not for removal to either place proposed, the Circuit Court, on sustaining a demurrer to the petition of contestants, ordered an election to determine the place to which the removal should be made. *Held:* That the Circuit Court, having acquired jurisdiction by the appeal, it was not error to order the election.

APPEAL from, and *Certiorari* to, *Pope* Circuit Court.
M. L. DAVIS, Special Judge.

The County Court of Pope county, at a special term on the 20th of July, 1886, upon proper petition, ordered an election to be held at the general election, September 5, 1886, submitting the questions (1) of removal of county seat from Dover; (2) removal to Russellville; (3) removal to Atkins. At such election a majority of the qualified voters of said county voted in

favor of a change from Dover, but there was not a majority for Russellville or Atkins. At the October term, 1886, of said court, T, M. Neal and others, after due notice, filed their petition contesting said election, and the court, upon hearing, sustained the contest, and set aside the election, and J. L. Shinn *et al.*, as contestees, appealed to the Pope Circuit Court. The time for holding the Pope Circuit Court, as fixed by law, was the first Monday—the first day—of November, 1886; but the court was not opened until the third day (Wednesday), when the Circuit Judge appeared, and proceeded to open and hold the court. On the fifth day of said month M. L. Davis was elected special Judge, and on the twelfth he proceeded to try the contest, upon the amended petition of contestants, and demurrer of contestees thereto, and sustained the demurrer, and so rendered judgment; and thereupon ordered an election to be held on the 19th day of March, 1887. Such an election was then held, and a majority of the voters of said county voted to locate the county seat at Russellville. The contestants appealed, and also sued out a writ of *certiorari.*

*McKennon & McGill* for petitioners.

1. The validity of the first election was the only question presented to the Circuit Court by the petition. Having held on demurrer to the petition that the first election was valid, it had no jurisdiction to order a second election—that matter being exclusively within the jurisdiction of the County Court. *Mansf. Dig., sec. 1160; Russell v. Jacoway, 33 Ark., 191.*

2. The Legislature could not make the judgment of the Circuit Court ordering a second election valid, because the court had no jurisdiction of the subject matter. *Cooley's Const. Lim., secs. 457, 472-3; Pryor v. Downey, 50 Cal., 388.*

3. All of the proceedings in the Circuit Court were *coram non judice*, and void, because the Judge did not appear and

open the court on the day prescribed by law. *Freeman on Judgments, sec. 121, and note; People v. Sanchy, 24 Cal., 17; People v. Bradwell, 2 Cow., 445; Dunn v. State, 2 Ark., 249; Brunley v. State, 20 Ark., 77; Grimmell v. Askew, 2 S. W. Rep., 707; State v. Williams, 2 S. W. Rep., 843.*

4. These proceedings could not be cured by legislative enactment, unless the Legislature might, by a prior law, have made the *time* of opening and organizing the court *immaterial*, or unless an act providing that the Circuit Court might be held at a time not prescribed by law would have been valid. *Green v. Abraham, 43 Ark., 420; Cooley's Const. Lim., 463.*

But the Circuit Courts must hold their terms in each county, at such times and places, as are or may be prescribed by law. *Sec. 12, art. 7, Const. of 1874.*

The Legislature could not dispense with this constitutional requirement.

The only way the term could have been saved, after the failure of the regular Judge to open the court on the first day of the term, would have been by a special election on the second day of the term. *Sec. 21, art. 7, Const. 1874.* And the judge so elected could have legally held the court until the regular Judge appeared.

There being no legal court, a special Judge could not legally be elected to try a case in which the regular Judge was disqualified. All of the proceedings were void.


*Wilson & Granger* for appellees.

1. The giving or offering to give facilities for the public convenience of the whole county as an inducement to move a county seat, is not bribery. *McCrary on Elec., sec. 148; 10 Iowa, 212;* nor is giving bond to furnish such facilities. *18 Cent. L. J., 278; 2 W. C. Rep., 252; 16 Cent. L. J., 176.*

2.  The November term of the Circuit Court was not a nullity because not opened until the third day of the term.  *3 Heisk. (Tenn.), 202; 2 Head (Tenn.), 582; 17 Tex., 1; 13 Ill., 671.*

But any irregularity was cured by the Curative Act of 1887.

3.  The Circuit Court had jurisdiction on appeal to order the second election.  *Const. 1874, art. 7, sec. 14; Mansf. Dig., secs. 1364, 1367, 1385 to 1393, 1436 to 1441; 33 Ark, 508; 38 id., 388; 4 id., 630; 5 id., 301.*

1. CIRCUIT COURTS: May be opened on third day of term: Election of special Judges.

COCKRILL, C. J.  The question presented upon the threshold in the consideration of this case, goes to the validity of the term of the Circuit Court at which the proceedings were had.  The term as fixed by statute began on the first Monday in November, but the court was not opened until the Wednesday following, when the Judge of the circuit appeared, opened and held the term of court at which the proceedings complained of were had.  If the court was held at a time not authorized by law, its proceedings are void.  *Brumley v. State, 20 Ark., 77; State v. Williams, 48 id., 227.*  The decision of this case may, therefore, reach beyond the single question of the election to change the location of the county seat.  It involves the legality of all the judgments rendered and proceedings had at the November term, 1886, of the Pope Circuit Court.  The Legislature undertook by act of February 21st of the present year to validate the proceedings of this term, but whether the act can have the desired effect, aside from other considerations, depends upon the solution of the question whether the Legislature can authorize the Judge to appear and open the court on the third day of the term, after a failure of the practicing attorneys to preserve the term for him by the election of a special Judge to preside in his absence, as provided by section 21, article 7, of the Constitution.  If the Legislature is without power to authorize the Judge to appear

Neal v. Shinn.

on the third day and then for the first time cause the court to be opened, it is apparent they could not breathe judicial life into his acts done at such a time, by a retroactive act, because that would be doing by indirection what could not be done directly. If they are not prohibited from empowering the Judge to appear on the third day and open court, notwith standing no special Judge had been previously chosen, the curative act was unnecessary, because the provision of the old Revised Statutes which authorized the Judge to appear and open court as late as the third day would then stand intact unaffected by the constitutional provision, and would afford legislative authority for the action of the Judge in opening court at the time disclosed by this record. The construction of the constitutional provision referred to must, therefore, furnish the solution of the question. If it contains no limitation upon its exercise, the power resides in the Legislature to authorize the Judge to open court at any time within the period fixed for the term, and in that event, the statute referred to is not inconsistent with any provision of the Constitution of 1868 or 1874, and has not been abrogated by either. Both instruments continue in force all previous laws not inconsistent with their provisions. *Sec. 1, Schedule Const. 1874; art 15, sec. 16, Const., 1868.*

The provision is as follows:

"Whenever the office of Judge of the Circuit Court is vacant at the commencement of a term of such court, or the Judge of said court shall fail to attend, the regular practicing attorneys in attendance on said court may meet at 10 o'clock a. m., on the second day of the term, and elect a Judge to preside at such court, or until the regular Judge shall appear."

It is not here affirmed in terms that the General Assembly shall not authorize the court to be opened by the regular Judge after 10 o'clock of the second day in the event no special Judge is chosen. Negative words are not necessary, however,

to create a prohibition. Every positive direction contains an implication of what is contrary to it, and affirmative words may imply a negative of what is not affirmed; but such an implication is not as readily drawn in the construction of a State Constitution as it is in dealing with a statute. *Vance v. Austell, 45 Ark., 400.* The reason is "the Constitution of a State is not a grant of enumerated powers. * * * We look to it not so much to see whether a contested enactment is authorized, but whether it is prohibited." *Vance v. Austell, supra.* For the General Assembly may exercise unlimited legislative power unless a restraint express, or necessarily implied in the prohibited powers, is found in the fundamental law; and this power is not to be cut off by inference save where the inference is too strong to be resisted. *Scales v. State, 47 Ark., 476.* But if the prohibition is plain, whether express or implied, no argument of hardship, or inconvenience, or public exigency, has any weight to deter the courts from checking assumed legislative power.

The main purpose of the provision in question was to provide a ready remedy for the continuation of a term of the Circuit Court in the absence of the regular Judge. Without this provision any term of a Circuit Court might fail for want of power to create a special Judge, and great inconvenience would follow. No provision for special Judges to hold terms of courts in the absence of the regular Judge existed in this State prior to the adoption of the Constitution of 1868, (*Crusou v. Whitley, 19 Ark., 99,*) which contained a provision substantially the same as that now under consideration. It asserts the right of the practicing attorneys in attendance to prevent the possibility of a lapse of the term by the selection of one of their number to take the place of the absent Judge, and by implication prohibits the Legislature from taking the power away. But it is not mandatory upon the attorneys to put their power of creation into exercise. The language is permissive

only—they *may* elect (*Edwards v. Hall, 30 Ark., 31*), and the penalty of an absolute lapse of the term is not imposed for a failure to do so. The provision recognizes the right of the regular Judge to appear at any time during the term and assume his judicial duties, if a special Judge has set and kept the machinery of the court in motion. We are aware of no canon of construction which would justify the conclusion that a denial of the legislative power to authorize the Judge to open court after the second day when no special Judge has been chosen, is necessarily implied because the right to do so is preserved to him if a special Judge has been chosen. An implied prohibition against depriving him of the right to appear in the one case, cannot logically be construed as an implied restraint upon the power to grant him the right in the other. *Sedgwick Const. & St. Law, 418, n. (a); Purcell v. Smitd, 21 Iowa, 540; State v. Tait, 22 id., 140.* This power of the Legislature had never been recognized as an evil that needed correction. We find nothing in the provision to indicate the intention of imposing a restraint upon the law-making power in this respect.

The statutory provsions referred to are as follows:

"Sec. 17. If any court shall not be held on the first day of the term, such court shall stand adjourned, from day to day, until the evening of the third day.

"Sec. 18. If at that time the court shall not be opened, such court shall stand adjourned until the next regular term, and all cases, civil, penal and criminal, shall stand adjourned over until the next term of such court." *Gould's Digest, chap. 50.*

Construing these provisions as in *pari materia* with the Constitution (*Billingsley v. State, 14 Md., 369*), the conclusion is, that if the attorneys fail to exercise their privilege of choosing a special Judge at 10 o'clock of the second day of the term, and the regular Judge does not appear, the court will stand adjourned until the next day, when he may lawfully

assume the duties of the bench.    There is, then, no irregularity disclosed by the record in the time of opening the court in this case, and the cause must be determined upon its merits.

2. COUNTY SEATS: Removal of: Inducement to voters.

The complaint filed by the contestants, who are the appellants here, charges that the offer of the appellees to build a court house and jail and donate them to the county, in case the county seat should be changed, and the execution of a bond payable to the County Commissioners for the faithful performance of their promise, was the offer of a bribe to the electors ; that a sufficient number of votes to change the result was influenced thereby ; and that the election voting a change of the county seat was, for that reason, void.

That donating facilities for the public convenience as an inducement to the electors of a county to vote for the removal of a county seat, will not invalidate the election, has been ruled in every case where the question has arisen to which our attention has been called, and as we think upon sound reasoning.    *State v. Etling, 29 Kan., 397; Dishon v. Smith, 10 Iowa, 212; State v. Purdy, 36 Wis., 225; Wells v. Taylor, 5 Mont., 202.*

The considerations of public policy which avoid the election of a candidate for an office who offers to serve the public at less than the salary fixed by law, do not apply to cases like the one at bar.    The distinction between the two classes of cases, briefly stated, is the difference between determining upon the moral character and personal fitness of an individual upon whom the integrity of the government and the preservation of its principles may for the time be devolved ; and settling a question of public convenience and pecuniary interest, involving no principle of self-government.    The latter being a question primarily of material advantages of many kinds, an offer by a municipality or of a part of its citizens to increase those advantages introduces no foreign or improper matter to the consideration of the voter.

The demurrer was properly sustained, and it was not error for the Circuit Court, after obtaining jurisdiction by the appeal, to enter the order directing an election to be held to determine to which of the two contesting points the removal should be made.

Affirm.

3. SAME: Contesting election: Order on appeal.