## SAUNDERS v. ERWIN.

1. COUNTY SEATS: *Result of election to change ; how determined ; list of poll-tax payers.*

Under the act of March 5, 1875, entitled, "An act to amend the revenue laws of this State," and the act of December 7, 1875, entitled, "An act to maintain a system of free common schools for the State of Arkansas," it was the duty of the Assessor to return upon his books for the year 1882 the names of the persons in his county liable to pay a poll-tax. And it was not error in the court to take the Assessor's return for that year as a guide in determining the result of an election, for the removal of a county seat, held in February, 1883, under the act of March 2, 1875, which provides that to ascertain the majority of voters necessary to authorize the removal of a county seat, " the County Court shall be governed by the number of persons liable to pay a poll-tax as returned upon the Assessor's books."

2. SAME: *Election for removing ; statute providing for, constitutional, etc.*

The case of *Vance v Austell, 45 Ark., 400,* sustaining the constitutionality of *sec. 1165 of Mansfield's Digest,* which makes the Assessor's return of persons liable to pay a poll-tax the criterion for ascertaining the number of qualified voters, in a county at an election for the removal of a county seat, and also holding that the Assessor's return is conclusive of such number, is approved.

APPEAL from *Prairie* Circuit Court.

M. T. SANDERS, Judge.

Saunders v. Erwin.

*Sam. W. Williams, Sol F. Clark* and *Geo. Sibley* for appellants.

1. The assessment list of 1882 is discredited by alterations which would throw the burden of proof upon those who claimed the benefit of it to explain these charges. *30 Ark., 285; Abbott Trial Ev., 49; id., p. 538.* An assessment book, where fraud appears, should be excluded *in toto. Patton v. Coates, 41 Ark., 111; Brightly Lead Cas. on Elec., 493; notes to id., 501.*

2. There was no law prior to 1883, and subsequent to the adoption of the Constitution of 1874, which authorized the Assessor to return any list of poll-tax as such, and *sec. 1165, Mansf. Dig.*, had nothing to support it. *Art. 14, sec. 3, Const.; Acts 1874-5, p. 222; Acts 1875, p. 19; Acts 1877, p. 46; Acts 1879, p. 24.* None of these require a list for poll-tax, returned by the Assessor, and therefore this case must be determined by the vote actually cast.

Taking the assessment rolls of 1881 and 1882, counsel present tabulated statements showing that, after deducting names improperly added, under ruling in *45 Ark., 400*, that the majority was for change.

3. The Legislature had no power to take from or add to the provisions of the Constitution in reference to the removal of county seats. The cases in *45 Ark., 400*, should be reconsidered, in so far as they held that the Legislature might add conditions and qualifications. Cite in support of their position, *Cooley Const. Lim., p. 213; Const., art. 13, sec. 3; Broom's Legal Max., 581; Cooley Const. Lim., 598 and 614, et seq.; Potter's Dwarris on St. and Const., 64-66, 221; 1 Sneed, 692; 47 Ill., 163; 48 id., 263; Angell & Ames Corp. (9th ed.), 499, 500; 5 Otto., 369; 18 Rep., 33; 15 Conn., 475; 9 B. Mon., 526; 37 Mo., 272; 16 Wall., 644; 22 Minn., 53; 6 Neb., 474; 80 Ky., 552.*

The court erred in holding that the assessment books should govern. But if any assessment should be taken, it should be that of 1881.

The act of 1875, in so far as it made the assessment book a test of the vote, was unconstitutional. See authorities *supra*.

*J. E. Gatewood* for appellees.

1. This case is governed and practically settled by *45 Ark., 400.* It was there held that a removal of a county seat cannot be made unless a majority of the votes cast be in favor of changing to a particular point, and exceeds one-half of the polls returned by the Assessor.

Reviews the evidence, and makes tabulated statements, showing that the majority was not for removal.

2. The Assessor's return of 1882 should govern in this case. That was the year the election was ordered, and more likely to show the list of voters in the county.

3. The Assessor was authorized by law to assess the poll-tax, and make return thereof. *Const. 1868, art. 9, sec. 4; Const. 1874, art. 14, sec. 3; act March 5, 1875.*

4. The decision in *45 Ark., 400,* should not be reconsidered.

The Legislature clearly had the right to require a larger number of votes to remove a county seat, than a mere majority of those voting, and to provide some method of ascertaining that number. *Art. 13, sec. 3, Const.; 4 Ark., 431; sec. 1165, Mansf. Dig.; 27 Ark., 176; 4 Am. Rep., 177; 1 Ark., 512; 23 Cent. Law Jour. No. 12, March 25, 1887; 32 Ark., 131; 1 Am. Rep., 238; Cooley Const. Lim., 168, 171; 11 Ark., 481; 39 id., 353.*

BATTLE, J. At the July term, 1882, of the County Court of Prairie county, many citizens filed a petition asking that an election be ordered to determine whether the county seat of that county should be moved from Des Arc to Hazen or not. At the October term following other petitions to the same effect were filed. These petitions not being deemed sufficient others were filed at a subsequent term, and the election was ordered to be held on the 15th of February, 1883. In the meantime, on the 18th of September, 1882, the personal assessment list of the county for 1882 was filed. The election was held on the day fixed, and the result was reported to the County Court, which found that the number of persons returned by the Assessor for 1882, liable to a poll-tax, was 2057; that the number of votes cast for change was 957; that the votes cast for change did not exceed one-half of the number of persons in the county liable to pay a poll-tax, as returned upon the personal assessment list of the county for 1882; and that the proposition for change was, therefore, defeated. An appeal was taken to the Circuit Court of the county with the same result had in the County Court.

Appellants now contend, among other things, that the court below erred, because there was no law authorizing or requiring the Assessor to return a list of the persons liable to pay a poll-tax at the time the assessments for 1881 and 1882 were made, and, therefore, the result of the election should have been determined by the vote actually cast; and because, if there had been such a law, to ascertain the majority necessary to authorize the change of a county seat, the court should have been governed by the number of persons liable to pay a poll-tax as returned upon the Assessor's books for 1881 instead of 1882.

The Constitution of this State ordains that an annual *per capita* tax may be assessed on every male inhabitant of this State over the age of twenty-one years. The Legislature, by

an act, entitled "An Act to amend the revenue laws of this State," approved March 5, 1875, provided that a *per capita* tax of one dollar should be levied on every male inhabitant over twenty-one years, for school purposes, and required the Assessor to give notice that he would appear at the usual voting places in each township, "for the purpose of taking a list of the personal and real property of each resident of the township, and the *per capita* tax of such as are liable to pay the same;" and, by an act entitled "An Act to be entitled an act to maintain a system of free common schools for the State of Arkansas," approved December 7, 1875, provided that the same shall be collected by the county collector at the same time and place that the State taxes are collected; and, by an act entitled "An Act to be entitled an act to provide for the locating and changing of county seats," approved March 2, 1875, provided that "to ascertain the number of qualified voters of any county, for the purposes of that act, and the lawful majority necessary to authorize the change or removal of any county seat as therein provided for, the County Court shall be governed by the number of persons liable to pay a poll-tax, *as returned upon the Assessor's books.*" From these acts, which were passed at the same session of the Legislature, it is obvious the Legislature intended that the Assessor should annually return upon his books the names of the persons in his county subject to a *per capita* tax. How else could the tax be levied and collected? These provisions of these acts have never been repealed; and under them it was the duty of the Assessor to have returned upon his books for the years 1881 and 1882 the names of the persons subject to the poll-tax.

The statute under which the election in question was held provides that to ascertain the lawful majority necessary to authorize the change or removal of any county seat as therein provided for, "the County Court shall be governed by the

number of persons liable to pay a poll-tax, as returned upon the Assessor's books." The object of the Legislature, in enacting this statute, was to require as near a majority of the qualified voters in a county as practicable to vote in favor of the removal of their county seat before a change could be had. To accomplish this object it adopted the Assessor's return of the persons subject to a poll-tax, " for convenience as a criterion to determine the result of such an election, under the notion that it would show approximately the number of voters living in the county." As a necessary consequence it follows, in this case, the court below did not err in taking the Assessor's books of 1882 as its guide in determining the result of the election, as it is manifest it would come nearer showing the number of voters living in Prairie county on the 15th of February, 1883, than the Assessor's books for 1881. *Vance v. Austell, 45 Ark., 400.*

The other questions presented by appellants were decided by this court in *Vance v. Austell, supra.* We are satisfied with the opinion in that case and decline to reconsider it.

We find no substantial error in the judgment of the court below, and affirm it.