## BUTLER *v.* MILLS.

### Opinion delivered January 4, 1896.

61    477
73    272

COUNTY SEAT—PETITION FOR REMOVAL.—Under the statute providing that when a third of the qualified electors of any county shall join in the petition for removal of the county seat, the county court shall order an election to be held, and the question submitted to the voters (Sand. & H. Dig. sec. 945), it is not necessary that any one petition contain the requisite number of names, but it is sufficient that all of the petitions contain in the aggregate the requisite number of voters, and it is immaterial that the petitions ask for removal to different places.

Appeal from Little River Circuit Court.

WILLIAM P. FEAZEL, Judge.

*J. C. Head*, for appellants.

The number of voters necessary to give the court jurisdiction to order the election was 674. Neither of the petitions for the four designated places contained the requisite number, *i. e.* one-third of the qualified voters. Sand. & H. Dig. secs. 943, 945; 15 L. R. A. 503–4. The names on the different petitions designating different places cannot be joined to give the requisite

one-third. Sand. & H. Dig. secs. 943–5. No one place can be designated or put in nomination to be voted for, unless it is put in nomination by one-third of the qualified voters.

*L. A. Byrne* and *Dan W. Jones & McCain*, for appellees.

The county court had jurisdiction. More than one-third of the qualified voters signed the three petitions for removal. All the names are to be counted as for removal. Sand. & H. Dig. secs. 943–5–9. This practice has been sanctioned by this court. 53 Ark. 533 ; 54 *id*. 409 ; 22 Fla. 29.

BUNN, C. J. This is an appeal from the Little River circuit court, from a judgment therein rendered affirming the judgment of the county court on appeal therefrom, ordering an election on the subject of a removal of the county seat of that county.

There were, at the time of the presentations for removal under the statute, as shown by the return of the assessor made next before that time, to-wit : on the 15th August, 1894, 2030 voters in Little River county; and the four petitions presented to the county for removal, in behalf of Millkin, Rocky Comfort, Ashdown and the Younse Place, contained 450, 125, 175 and 19 names of unchallenged voters, respectively, making in the aggregate the number of 769 undisputed names of voters, asking for removal, but for the different places as aforesaid. One-third of the legal voters was 677. Thus the aggregate number of petitioners for removal to the four several places from the existing county seat, was 92 voters in excess of the requisite one-third named in the statue.

The only question before us is, was the county court authorized to order the election, under section 945, Sandels & Hill's Digest, on the petition of more than

one-third of the voters of the county, expressed in four several petitions for removal, but each to its own place, where no one of said petitions contained the names of the requisite one-third of the voters of the county?

Section 945, Sand. & H. Dig., is in the following language, to-wit: "Whenever the qualified voters of any county in this state to the number of one-third thereof shall join in the petition to the county court of such county for the change or removal of the county seat, embodying in the petition the designation and abstract of title and the terms and conditions of the sale or donation, as provided for and required by section 943, the county court shall order an election to be held at the several voting places in the county, directing that the proposition of the petitioners for the change or removal shall be submitted to the qualified voters."

It will be observed that the word "petition" is used in the singular number in this section, and from that circumstance it might reasonably be inferred, and is in fact contended, that the *one* petition,—that is to say, *some one* of the petitions, if there be more than one,— should of itself contain the names of the requisite one-third of the qualified electors of the county, ascertained as aforesaid; but the language of the section referring to the property conditions and stipulations to be attached to and accompanying it make reference to section 943, which reads as follows, to-wit: "Unless for the purpose of the temporary location of county seats in the formation of new counties, it shall be unlawful to establish or change any county seat in the state without the consent of a majority of the qualified voters of the county to be affected by such change, nor until the place or places at which it is proposed to establish or change any county seat shall be fully designated, such designation embracing a complete and intelligible description of the proposed locations, together with an abstract of the

title thereto and the terms and conditions upon which the same can be purchased or donated by or to the county"; thus clearly providing that more than one place, and any number of places, may be entered as candidates for the contemplated location, if the change or removal is voted for.

In section 948 it is provided that the ballots shall be so formed that each voter will be privileged to vote on two separate and distinct propositions, namely, the removal, and the place to which he desires the removal to be. And in the next section it is provided that if the first proposition—that is, the removal—is sustained by a majority of the voters in the county, then that proposition is eliminated from the contest, and the same is narrowed down to a settlement of the second proposition, namely, the place to which the removal shall be made. This contest is determined by the same election at which the removal is settled, if a majority of the voters of the county, at that election vote for any one of the designated places, no votes being counted on this proposition except those for places put in nomination, so to speak, by the county court; but, if no one place shall receive the requisite majority at this first election, then the court must order another election, to determine which one of the two places receiving the highest number of votes at the first election shall be the location of the county seat.

It is contended, with sound reasoning, that, if the petition referred to in section 945 must contain the names of one-third of the voters of the county, the same requirements should be made of all the petitions, and that, since any number of petitions may be presented, it follows that, when there should be as many as three petitions, some one of them must necessarily fail to contain the one-third, and therefore the object of the law would be defeated. Again, it is suggested that, in view of

former conditions attached to removal of county seats, acting with abundance of caution, the legislature really intended that at least one of the petitions should contain the names of the required one-third of the voters of the county, and that, without this precaution, elections on the subject could be too easily procured. This would appear to be true, at first sight; but, looking at it more closely, such a precaution would really amount to nothing, because the petitioners for the various places could and would combine, and so distribute their names on the several petitions as to give one the requisite one-third, and thus attain the end reached in case the requisite one-third may be counted from the aggregation of the names on all the petitions. So, in either case named, no good could come to the public, and both of the two contentions are without any good reason to support them, and therefore we are not to attribute such an intention to the legislature.

We are clearly of the opinion that if all the petitions asking for removal, taken together, amount to one-third of the voters of the county, the county court is authorized and required to order the election, and that it makes no difference how many different papers or petitions contain these names, the only requisite being that they all ask for removal, or enough of them to constitute the one-third, and this without regard as to how any of them may stand on the other proposition, namely, the place of location of the county seat. We are therefore of the opinion that the judgment should be affirmed, and the cause is remanded, with directions to proceed according to law. This makes it unnecessary for us to rule on the other questions raised.