DUNN *v.* LOTT.

Opinion delivered April 8, 1899.

COUNTY SEAT REMOVAL—SUFFICIENCY OF PETITION.—Sand. & H. Dig., §§ 945, 953, which provide that the county court may order an election to submit the proposition for removal of a county seat to the voters whenever one-third of "the qualified voters" of the county petition therefor, and that, in determining whether a majority of the qualified voters have so petitioned, the county court shall be governed by the number of persons liable to pay a poll tax as returned upon the assessor's books," have not been repealed or modified by Amdt. 2, Const. 1874, providing that only those male citizens possessing the other qualifications therein enumerated "who shall exhibit a poll tax receipt or other evidence that he has paid his poll tax," shall be allowed to vote at any election. (Page 592.)

Appeal from Little River Circuit Court.

WILL P. FEAZEL, Judge.

STATEMENT OF FACTS.

Several petitions were filed in the county court of Little River county in 1897, asking for an order for an election for removal of the county seat from Richmond to the places named in the petitions. These petitions were heard by the county court in May, 1897, and the court refused to order the election. An appeal was taken to the circuit court, and the cause heard there upon the petitions of appellees, the answer and remonstrance of appellants, and an agreed statement of facts.

The finding of the circuit court is as follows: "The court finds that the number of persons in Little River county liable to pay a poll tax, as returned by the assessor, is 2,239, and the number of persons appearing on the petitions for removal

and liable to pay a poll is 812. And the court further finds that the number of qualified voters of Little River county, as shown by the official list certified by the tax collector of said county in 1896, and filed with and recorded by the county clerk as required by law is 1813, and that the number of qualified voters upon the petitions for removal, as shown by the said official list, is 664. The court therefore finds that the petitions for removal of the county seat of Little River county contain one third of the qualified voters of said county as contemplated by the law."

The court thereupon gave judgment in favor of petitioners, and ordered an election as prayed. From this judgment an appeal was taken to this court.

*J. C. Head*, for appellants.

*L. A. Byrne*, for appellees.

RIDDICK, J., (after stating the facts.) This is an appeal from a judgment ordering an election on a petition for the removal of a county seat. The only question presented is whether the amendment to the constitution requiring each voter to exhibit a poll-tax receipt or produce other evidence of the payment of his poll-tax before voting affected or changed the statute in reference to the removal of county seats.

The statute in question provides that the county court may order an election to submit the proposition for removal of a county seat to the voters whenever one-third of "the qualified voters" of the county join in a petition to that effect. Sand. & H. Dig., § 945. A majority of the qualified voters must vote in favor of a change to the place named in the petition before the court can make the order for removal. Another section of the act is as follows: "To ascertain the number of qualified voters of any county for the purposes of this act, and the lawful majority necessary to authorize the change or removal of any county seat as herein provided for, the county court shall be governed by the number of persons liable to pay a poll-tax as returned upon the assessor's book." *Id.* § 953.

This act has several times been held to be valid. *Vance* v. *Austell*, 45 Ark. 400; *Saunders* v. *Erwin*, 49 Ark. 376.

These decisions were rendered before the passage of the amendment to the constitution above referred to, but we see nothing in the amendment that conflicts with the statute. The amendment imposes upon the voter the condition that he shall produce evidence of having paid his poll tax before he is allowed to vote, but if a citizen of the county fails to pay his poll tax, he is still a citizen entitled to be considered and protected as a citizen, and the legislature has the right to require that he shall be considered and counted in determining the number of voters there are in the county, and the number of votes necessary for a removal of the county seat. Our constitution prohibits the removal of a county seat without the consent of a majority of the qualified voters of the county (Const. 1874, art. 13, § 3), but it does not prohibit the legislature from requiring a greater number than a majority to vote in favor of removal before changing the county seat. The legislature has the power, if it sees proper to do so, to require a two-thirds or three-fourths vote before authorizing a removal. It certainly has the power to require that the vote in favor of removal shall be a majority of all the citizens in the county who would be entitled to vote upon the payment of a poll tax. This is, in effect, what our statute does require, and it makes the assessor's list of persons liable to pay a poll tax the criterion by which to determine the number of such persons in the county. If we should concede the contention of counsel to be true that such list furnishes an inaccurate method of establishing the number of qualified voters in the county, it would avail nothing; for that was a question within the discretion of the legislature, which we cannot control. As the purpose of the statute is to furnish a criterion, not for determining the number of persons who vote or pay a poll tax, but the number of those entitled to vote upon complying with the law in that respect, it seems to furnish a test sufficiently accurate for practical purposes. We do not undertake to say that such list can in all cases be taken as conclusive; that question not being before us here.

As the statute provides that all persons returned on the assessor's list as liable to pay a poll tax shall be counted as qualified voters, in ascertaining the total number of such voters

in the county, we think that the right to petition for the removal of a county seat is not confined to those only that have paid a poll tax, but extends to all citizens of the county who would have the right to vote upon the payment of a poll tax. In order to carry out the evident purpose of the legislature, the phrase "qualified voters," used in the act, must be given this meaning in determining the qualification of petitioners, and not be restricted to such only as have paid their poll tax. But when the election is held, then, of course, only those can vote who have complied with the law in reference to the payment of a poll tax. Our conclusion is that the judgment of the circuit court ordering an election in this case was proper, and the judgment is therefore affirmed.