## WILLIAMSON *v.* RUSSEY.

Opinion delivered December 10, 1904.

1. COUNTY SEAT ELECTION—SUFFICIENCY OF PETITION.—Where several petitions asking for an election on the question of removal of a county seat, having the same heading, were circulated in the county, the election should be ordered if they contain in all one-third of the electors of the county, although the signatures to all the petitions save one were detached from their headings and attached to the latter petition, which without them contained less than the required number of electors. (Page 272.)

2. SAME—DETERMINATION OF NUMBER OF ELECTORS.—The Legislature had authority to fix the collector's list of the poll taxes paid as the rule to govern in determining the number of electors in the county, in case of county seat removals as provided by Acts 1901, c. 76, § 1. (Page 273.)

Appeal from Sevier Circuit Court.

WRIGHT PRICKETT, Special Judge.

Reversed.

H. C. Williamson and others, on January 4, 1904, filed a petition in the county court of Sevier County, asking that it make an order directing an election to be held for the purpose of voting upon the question whether or not the county seat of said county should be removed from Lockesburg to De Queen. They offered, if the seat should be removed from De Queen, to donate a block of ground, of which they tendered an abstract of title, and they also deposited with the county treasurer $5,000 with which to build a new courthouse. Their petition contained 1,430 names.

On the same day a remonstrance was filed by C. W. Russey and others, raising numerous objections to the petition. The county court ordered the collector to make out a list of all those who had paid their poll taxes between the first Mondays in January and July, 1903. The list so filed showed that 2,586 persons had paid their poll taxes. The county court decided in favor of the petitioners. On appeal the circuit court found that twelve or more petitions were printed and given to parties for the purpose of obtaining signatures; that these petitions were returned with signatures attached; that all of the signatures were detached, without authority, from their respective petitions, except from one, and that all of said detached signatures were attached to that one petition, and that but 200 names had been subscribed to the petition to which the detached signatures were attached; and that all of the signatures were detached from all of the petitions that had been circulated and attached to what purported to be a copy of the petition that the parties had signed. And the court declared the law to be that if a number of petitions with similar headings be circulated for signatures, and that the headings from all of the petitions except one be cut off and attached to the one heading, the paper thus presented was not signed by those whose signatures were thus detached and attached to it. So the court held that the petition was insufficient, and dismissed the same. From this judgment petitioners have appealed.

*C. E. Davis, W. H. Collins, Lake & Wingo* and *J. H. Jackson,* for appellants.

*Geo. Vaughan, W. F. Nichols, Steel & Steel, C. M. Anderson, B. Norwood, C. E. Jones, H. L. Norwood* and *E. B. Kinsworthy,* for appellees.

HILL, C. J. 1. A petition for an election on question of removal of the county seat, as provided in section 945, Sandels & Hill's Digest, was presented to the county court of Sevier County. Twelve or fifteen petitions were printed from the same form, circulated throughout the county, and returned to the committeeman in charge of them, who had printed them. He detached the captions from all but one, and pasted the body of the other petitions to the one undetached from its caption, thereby bringing all the signatures under one caption, and that caption identical with the one under which the signatures were made. All the petitions were, as expressed by appellee's counsel, "telescoped" into one. Did this vitiate the petition?

There is no evidence attacking the authenticity of the consolidated paper as having been made of the various petitions signed by the petitioners under another, but identical, caption. Authorities from California are presented in which it was held that such bringing together of petitions is illegal, and the court said the authorities were conflicting. No other authorities which are in point are cited by either side. It is one of those questions of construction of a local statute, part of a local system, where authorities are less persuasive than in questions of general law. This section of the Digest and the petition thereunder received construction by this court in *Butler* v. *Mills,* 61 Ark. 477. In that, the Little River County removal case, the petitions were not "telescoped," but were presented as signed, no one of them containing one-third of the electors, but all containing more than one-third. It was contended, as the statute used the word "petition" in the singular, that "petitions" did not meet the requirement. This court, however, looked beyond the form, and held that these petitions presented more than one-third of the qualified voters, and therefore constituted a valid petition for removal. Evidently, to obviate that very objection, these petitions were combined. Ought not the court in this, as in that, case to look

beyond the form into the substance, and, if it finds that more than one-third of the qualified voters have petitioned for the election to order the same? It would be sticking in the bark to hold otherwise.

It is earnestly and eloquently urged by appellees' counsel that such a construction of the statute would open the door to frauds, and that the petitions would have to be proved by parol evidence, instead of being self-proving. The answer to that is that no system is free from frauds, and wherever fraud is found it vitiates that which it touches. It does not seem that any more parol testimony is necessary to prove a "telescoped" petition than to prove any other fact in a court of justice. It must be confessed that it is bad practice, and should not be followed, because signers might not recognize the petition signed by them in this form, and it might give rise to unnecessary contentions, and make the proof of the truth more difficult. But, in the absence of any such evidence, or even a suggestion from any signer that this is not the petition signed by him, the court is not warranted in disregarding the expressed wishes of these electors, merely because one caption is detached from the petition, and an identical one attached.

2. The act of 1901, p. 76, fixes the collector's list of the poll taxes paid as the rule to govern in determining what is the number of electors in the county, in order to ascertain the majority, etc. The legislature could fix any definite and certain number or any definite and certain way of ascertaining the number, as was herein done. This is but an approximation, for there may be many legal voters not found on that list, young men arriving of age within the prescribed time, qualified electors moving from other counties and being in the county the requisite length of time to vote, persons who had paid poll taxes and were accidentally omitted, and possibly others. Yet the collector's list must be used to govern the ascertainment of the requisite number of qualified voters to be signed to the petition. To illustrate: The collector returns 3,000 electors on his list; then the petition, to become effective, must contain at least 1,000. It might happen that through death and removals there were not 3,000 electors in the county, yet the petition must, under this act, contain 1,000 qualified electors, or it fails. On the other hand, from the causes

suggested, there may be over 3,000 electors, and yet the petition is effective if it contains 1,000 qualified voters, although all of them may not be upon the list. As the case must be reversed, and questions of this kind are presented, it has been considered necessary to construe this act so that on the trial on the merits of the petition there may be no error committed.

3. It has been insisted that sections 943 and 945 were not complied with in regard to the title of the proposed new location. That question was not tried in the circuit court, as that court refused to entertain the petition for the reason heretofore set forth, and hence it is not for review here now. Suffice it to say that it will be presumed that on a hearing on the merits the lower court will see that the statutes are complied with.

Reversed and remanded, with directions to hear the petition, and, if it contains of qualified electors more than one-third the number returned by the collector, to grant it and order an election, if all other statutory requirements are fulfilled.