VELVIN *v.* KENT.

4-5508                                    128 S. W. 2d 686

Opinion delivered May 8, 1939.

G. P. *Casey* and *Geo. R. Steel*, for appellants.

*Steve Carrigan, E. F. McFaddin, Albert Graves, O. A. Graves, Royce Weisenberger* and *L. E. Glover*, for appellees.

BAKER, J.   On May 5, 1938, the County Court of Hempstead county called an election to be held June 11, 1938, to have the electors of that county 'vote upon and determine the matter of the removal of the courthouse from Washington to Hope.

The election was held according to call made with the result, as certified by the election commissioners, Hope received 2,040 constituting an alleged majority of 455 votes.

There was a contest in the county court followed by an appeal to the circuit court. The contestees won in both courts.   This appeal from the judgment of the circuit court challenges the correctness of the trial court's decision.

It becomes necessary, in explanation of some of the matters considered, to say the appellees have sought a dismissal of this appeal for the reason the appellants have failed to comply with Rule IX in regard to abstracting the entire record made upon the trial of the case.   We have overruled that motion solely upon the ground that some matters of apparent merit appear from the abstract made, when taken in connection with the findings of fact by the court and declarations of law thereon.

Appellants have abstracted the evidence of thirteen witnesses, omitting all testimony of 247 other witnesses, so it must be held that no disputed question of fact may here be considered. Every inference and presumption to support findings in favor of appellees will be indulged.

But appellants urge that the court's declarations of law are erroneous and that the judgment must be reversed for these alleged errors.

Such a conclusion does not necessarily follow. The court may have erred in some aspects of the case and yet the final results be correct.

Appellants open their argument with an admission that according to the certificate of the collector there were 3,169 poll tax payers in the county for 1937. This was the last certificate issued prior to dates of calling and holding the election. It is also admitted that, according to the election returns as certified, there were 2,040 votes for removal which was a majority of 455. Appellants insist they have overturned this majority. Their method of attack they state as follows: "This appeal primarily involves the construction of § 2 of act 123 of the Acts of the General Assembly of Arkansas for the year 1935 and carried in Pope's Digest as § 4693, for it will be conceded by the appellees that if this court should hold that votes cast by persons who did not assess and pay their poll tax in person or upon the written authority of their agent were illegal and should be thrown out then the election failed and the cause should be reversed."

If appellants have mistaken the right or correct test in the determination of the proper majorities, it is practically conclusive that appellees must prevail. Other alleged errors urged by appellants tend to reduce the majority if sustained, but without the support of the above stated attack the appellants must fail. For that reason we now examine the only conclusive proposition presented.

The Constitution of 1874 provides that county seats may be changed by a majority of the qualified voters of the county . . . Art. XIII, § 3.

The applicable statutes are found under Chapter 39, Pope's Digest, §§ 2388 to 2400, inclusive. It will be noted that in the several sections in regard to petitions and elections those who may participate therein are designated as "qualified voters." We find in § 2398 who are "qualified voters." They are "persons who have paid their poll tax, as shown by the list of persons who have paid their poll tax as filed with the county clerk by the collector on the first Monday preceding the holding of any election or the removal or change of any county seat under this act." There was a provision in this amending act of March 7, 1901, exempting certain counties mentioned. Those counties are still under the original act as it was prior to amendment. It is significant, we think, that "qualified voters" under the original act of March 2, 1875, were those listed by the assessor as "those liable to pay poll tax" and so returned by him.

In those counties still under the original act as it was prior to the amendment, we find outstanding authority fixing definitely the status of the "qualified voter." *Vance* v. *Austell*, 45 Ark. 400.

The opinion in this cited case was delivered in 1885, prior to the passage of the amending act of March 7, 1901, now § 2398, Pope's Digest. It is a landmark in Arkansas jurisprudence. In it the act under consideration is boldly criticised as a misconception of the legal meanings of constitutional provisions, yet its constitutionality is upheld, and we think correctly so.

Since this case has never been overruled or modified it is yet the law of this state. We quote pertinent declarations from this opinion. . . . "it erects an arbitrary standard for determining the result of the election," . . . Again we find this language: "The result is that, under our Constitution and laws, before the removal can be had, there must be a majority in favor of the proposition to remove the county seat to a particular point, and the vote cast in favor of the proposition must exceed one-half the polls returned by the assessor. The last requirement is not an unreasonable regulation."

In the matter of this appeal the "last requirement" above discussed is the only one at issue. We are told

less than 200 voted against removal. So appellees must count their "qualified voters" against the total number of such "qualified voters" to determine if they have exceeded one-half thereof.

In *Vance* v. *Austell, supra,* it is stated that the assessment list had been delivered to the clerk's office on the first Monday in June, as required by § 5672, Mansfield's Digest. The court said in respect thereto: "And being so returned, it was a finality for all purposes connected with a county seat election. *Ib.* 1156. It matters not that there were other persons in the county liable to assessment for per capita tax and whose names were afterward added by the assessor; nor that some of the persons included in the list were not in fact legal voters."

And it is also held that the criterion fixed by law would be destroyed if courts were allowed to inquire into the completeness of the list, or to enter upon an investigation into the qualifications of those who did not offer to vote. It was also held that the trial court erred in holding that the assessor's books were not conclusive for the purposes of the election, but open to contradition and correction by extraneous proof. The court then struck from the assessor's list names added by him after the first Monday in June.

For more than 50 years the doctrine announced in *Vance* v. *Austell, supra,* has not been changed or modified. The statutes as construed have been deemed sufficient for the purposes designated. Experience teaches us that inadequacy will compel changes in an effort to make correction.

The application of this cited case to the problem here will be clear if we substitute poll taxpayers for the assessor's list, the poll taxpayers to be determined by the collector's list filed with the county clerk, Pope's Dig., § 2398. We quote from that section: "To ascertain the number of qualified voters of any county for the purposes of this act, etc." We have purposely ceased to quote at this point to direct attention to the expression, "for the purposes of this act," lest it be argued that this provision furnishes only a measure for the determination of a law-

ful majority. It does that by express words, so it must be held that, ''for the purposes of this act'' means something more.

It has been argued that § 2 of act 123 of 1935 furnished a proper test to determine who are electors. That is not a disputed question. In this case we have a certified list of electors made by the collector and filed with the county clerk in 1937. They were qualified electors, made so by statutes applicable. Chapter 39, Pope's Digest. Act 123 of 1935 was in force at the time and we think under statutes aforesaid and doctrine announced in Vance v. Austell, which we fully approve, there is a conclusive presumption effective to foreclose inquiry as to qualifications of these particular voters so listed. Act 123 of 1935 was amended by act 46, 1939, but the amendment or change does not affect any issue on appeal. This could not apply to those who may have moved away, so as to create a disqualification, nor can it apply to those who have moved into the county since the list was made.

The changing or removal of a courthouse may be said to be a special proceeding, regarded as such by both the legislative and judicial departments. The legislature has made the collector's poll tax list a criterion in county seat removals. This court gave full approval. Williamson v. Russey, 73 Ark. 270, 84 S. W. 229; Neal v. Shinn, 49 Ark. 227, 4 S. W. 771; Dunn v. Lott, 67 Ark. 591, 58 S. W. 375; Saunders v. Erwin, 49 Ark. 376, 5 S. W. 703.

So it appears the trial court erred in permitting this certified list to be challenged generally.

Upon entering upon this method of procedure this anomalous situation presented itself quite naturally. Appellants insisted several hundred were disqualified under the proof offered; that is, they were not in fact qualified voters. The court so held as to large numbers. All this was done over objections of appellees who then argued that if the court might properly enter upon such inquiries the logical consequences must result in the removal from the filed list the disqualified voters as adjudged by the court, including many alleged to have been improperly assessed and paid upon by some of the appel-

lants, in not complying with act 123 of 1935. The court overruled this contention.

Under the court's rulings, even if all those found to be disqualified were deemed to have voted for a removal and that number there deducted from the certified majority, appellants failed upon the count.

Although it might be found the court made some erroneous announcements, these were immaterial and the ruling we have announced will increase appellees' majority over that determined by the court. Besides, we have decided § 2 of act 123 against appellants' contention that it is the sole criterion. Both the certified list, and said act must be given effect. This holding is admittedly conclusive.

The only other contention appellants make is that the court, having constructive possession of all ballots, should have gone into them for examination. This was justified because of the charges of fraud and improper conduct of electors and officers of the election. These charges were serious and grave, but they did not prove themselves. Forceful and emphatic denunciation at this time does not supply proof wholly lacking upon the trial.

Without stating and discussing, other matters presented, we must content ourselves with an assurance to all parties interested that we have given due consideration to all propositions argued upon this appeal, not even overlooking the oratorical plea for reverence for the honored dead and their homes as shrines for those who are whole-hearted admirers of that brilliant past. Those who lived in those days beat out the pathway for our feet. We humbly follow them. We, therefore, hold that upon the whole case the judgment was correct.

Affirmed.

MEHAFFY, J., not participating, GRIFFIN SMITH, C.J., SMITH, J., concur in judgment.

SMITH, J. (concurring). It has not been made to appear that the court below was in error in finding that a majority of the qualified electors of Hempstead county voted to remove the county seat to Hope, and for that

reason I concur in the holding that the judgment should be affirmed.

I do not concur in the reasoning by which the majority have reached that conclusion. The majority say that "section 2 of act 123 of 1935 (carried into Pope's Digest as § 4693 thereof) furnishes a proper test to determine who are electors." But that test was not applied. Had it been, many of the 3,169 names appearing on the collector's list would have been found not to be qualified electors. The court below so found, and this is admitted to be true.

I think the majority misconceive the purpose and effect of § 2398, Pope's Digest, and also the effect of the opinion of this court in the case of *Vance* v. *Austell*. It is true, of course, as the majority say, that § 2398, Pope's Digest, has changed the law as it existed when the opinion in *Vance* v. *Austell* was rendered, the change being to require, in certain counties (Hempstead, among others), a majority vote of the qualified electors as certified by the collector, instead of a majority of all persons assessed, as was formerly the law, and it is true also, as the majority say, that in those counties to which § 2398, Pope's Digest, applies, the list of voters certified by the collector is conclusive of the number of which a majority must be obtained to remove the county seat. In other words, the collector's certified list is conclusive as to the number of votes required to remove the county seat, and a vote of not less than one more than half that number is required to remove the county seat.

In determining that number it is immaterial that persons who have been certified by the collector as qualified electors are not such in fact. They must be included, nevertheless, and at least one more than half that number must vote for removal to remove the county seat. Section 2398, Pope's Digest, merely provides the basis for determining the number of qualified electors. Section 3 of art. 13 of the Constitution provides that "No county seat shall be established or changed without the consent of a majority of the qualified voters of the county to be affected by such change," and § 2398, Pope's Digest,

provides how the number of qualified voters may be ascertained. The majority quote *Vance* v. *Austell* as authority for holding that this is "not an unreasonable regulation," which is, of course, the law. But when you have thus ascertained what number of votes will be required to remove the county seat, there remains to be determined whether the necessary number of votes were cast for that purpose, and this means, of course, legal votes. No others have the right to vote in determining that question. The provisions of § 2 of act 123 of the Acts of 1935, as well as those of any other applicable statute, may be invoked, not for the purpose of changing the arbitrary number of which a majority must be received, but for the purpose of determining whether persons who voted were in fact qualified electors.

As I understand the majority opinion, it is held that the vote of no person may be challenged if his name appears on the list certified by the collector. It may not be for the purpose of determining the total number of qualified electors in the county, but it does not follow, and § 2398, Pope's Digest, does not provide, that one, not a qualified elector, may vote for removal if his name was certified by the collector as having paid a poll tax. It has never been held that the mere possession of a poll tax receipt qualifies one to vote, if he is otherwise ineligible to vote. The contrary has been held in all of the innumerable election contests which have been reviewed by this court. If § 2398, Pope's Digest, is so construed, it is clearly unconstitutional, as the section of the Constitution above quoted permits only "qualified voters" to participate in the election and to have their votes counted for removal. So that in any election contest over the removal of the county seat, the question to be determined is whether those voting for removal were in fact qualified electors, and whether the number of qualified electors so voting totaled more than half the number certified by the collector as having paid their poll tax.

Act 38 of the Acts of 1901 became and is § 2398, Pope's Digest, and was construed by this court in the case of *Williamson* v. *Russey*, 73 Ark. 270, 84 S. W. 229. The question there involved was whether the requisite

number of electors had signed petitions for the holding of an election upon the question of the removal of a county seat. Under the law, as it then existed, and now is, it was necessary for the petitions for ordering an election to contain a third of the qualified electors. In construing this act of 1901, now appearing as § 2398, Pope's Digest, it was said in the case of *Williamson* v. *Russey, supra:* "2. The act of 1901, p. 76, fixes the collector's list of the poll taxes paid as the rule to govern in determining what is the number of electors in the county, in order to ascertain the majority, etc. The legislature could fix any definite and certain number or any definite and certain way of ascertaining the number, as was herein done. This is but an approximation, for there may be many legal voters not found on that list, young men arriving of age within the prescribed time, qualified electors moving from other counties and being in the county the requisite length of time to vote, persons who had paid poll taxes and were accidentally omitted, and possibly others. Yet the collector's list must be used to govern the ascertainment of the requisite number of qualified voters to be signed to the petition. To illustrate: The collector returns 3,000 electors on his list; then the petition, to become effective, must contain at least 1,000. It might happen that through death and removals there were not 3,000 electors in the county, yet the petition must, under this act, contain 1,000 qualified electors, or it fails. On the other hand, from the causes suggested, there may be over 3,000 electors, and yet the petition is effective if it contains 1,000 qualified voters, although all of them may not be upon the list."

The rule there announced is that persons may sign the petition for an election although their names do not appear on the collector's certified list, if they are qualified electors. The corollary of that proposition is that they may not sign the petition, or vote, unless they are qualified electors, even though their names appear on the collector's list. At the election some number in excess of half the number of persons certified by the collector as having paid their poll tax must vote for removal to authorize that action, but if a majority of the qualified

electors did so vote, removal carries, even though, as was said in the Williamson case, *supra,* "all of them may not be upon the list" certified by the collector.

The right to vote is not conferred by the fact alone that names appear upon the collector's certified list, nor may it be denied because the name of a qualified elector does not appear upon the list. To hold otherwise would render ineffective the mandate of the Constitution that the county seat may be removed only upon the vote of a majority of the "qualified voters" in the county affected.

For the reasons stated I concur only in the judgment of the court, and am authorized to say that the Chief Justice shares the views here expressed.