Argued February 18, decided March 4, 1913.

### TAZWELL `v`. DAVIS.*

(130 Pac. 400.)

**Elections—Contest—Statutory Provisions.**

1.  The powers and mode of procedure of the court in an election contest must be ascertained from the statute authorizing the proceeding; the determination of an election contest being a judicial function only so far as authorized by statute.

**Elections—Contest—Statutory Provisions.**

2.  Section 3422, L. O. L., provides that the county clerk, immediately after making an abstract of votes in his county, shall make a copy thereof and transmit it to the Secretary of State, who, in the presence of the Governor, shall, within 30 days after the election, and sooner if all the returns be received, canvass the votes, and that the Governor shall grant a certificate

---

*The authorities on the marking of official ballots are reviewed in a note in 47 L. R. A. 806.                    REPORTER.

of election to the person elected and issue a proclamation declaring his election. Section 3524 provides that actions to contest the right of any person declared elected must be commenced within 40 days after the return day of the election, unless based on an illegal payment of money or other valuable thing. Held, that a contest commenced prior to the canvass by the Secretary of State, and before the certificate of election had been granted to either candidate, was premature.

### Elections—Contest—Statutory Provisions.

3. Section 3426 et seq., L. O. L., authorizes proceedings to contest an election to any county, district, or precinct office. Section 3529, which was part of the corrupt practices act of 1909 (Laws 1909, p. 33, § 45), provides that any elector of the State, or of any political or municipal division thereof, may contest the right of any person to any nomination or office for which he has the right to vote, on the ground of deliberate, serious, and material violation of any of the provisions of that act, or of any other provisions of the law relating to nominations or elections, when the person whose right is contested was not eligible to such office, or on account of illegal votes, or an erroneous or fraudulent count or canvass thereof. Held, that an elector may contest the election of a person to the office of circuit judge under Section 3529, although that office is neither a county, district, nor precinct office.

### Elections—Contest—Pleading—Petition.

4. A petition in an election contest, alleging that the board of canvassers of an election returned that contestee received 10,793 votes for an office, and the contestant 10,665, that the clerks and judges of 191 precincts named made a false and erroneous count, that contestant was informed and believed that 250 or more votes were counted for the contestee more than were voted for him, and that they failed to count a large number cast in favor of contestant, and that contestant was informed and believed that 10,543 votes, and no more, were cast for the contestee, and 10,915 or more for the contestant, but not pointing out in which of the precincts named the errors occurred, by what judges or clerks they were made, or whether they were intentional, and, while alleging that the count was fraudulent, not setting forth any facts constituting fraud, was insufficient, because indefinite and failing to state any traversible facts.

### Elections—Contest—Pleading—Petition.

5. A petition in an election contest, alleging that illegal, spurious, and void ballots were cast, which were erroneously and

illegally counted, in that there were various illegal marks of identification and erasures made upon the ballots by the voters, so that they could be readily identified, but not alleging in what particular precincts they were cast, the character of the marks, or whether they were accidental or intentional, or how many ballots contained illegal marks, and how many erasures, was insufficient; the allegation that the marks were illegal being a mere conclusion.

#### Elections—Voting by Ballot—Marking Ballots.

6. Under Section 3412, L. O. L., prohibiting electors from placing on their ballots any distinguishing mark whereby they may be identified, a mark which the elector has a legal right to place on the ballot, and which is necessary to indicate his choice, does not vitiate the ballot, although it might distinguish it from others and afford a means of identifying the voter.

#### Elections—Contests—Pleading—Petition.

7. Under Section 3463, L. O. L., providing that, where an elector has not registered in the precinct in which he applies to vote, he shall be considered as challenged, and required to subscribe and swear to the blank A, prescribed by Section 3449, and to procure six freeholders to take the oath therein provided that they are acquainted with the elector and believe the statements made in his oath are true, that for this purpose judges of election may administer oaths, and that in cities having a population of 5,000 or more the elector and the freeholders must take the oath before the judges of election in the precinct and at the time the elector offers to vote, a petition in an election contest, alleging that in 19 precincts named votes were illegally and erroneously counted, for the reason that the electors were not registered, and made no oath before any judge of the election as to their qualifications, but not giving a list of the number of illegal votes, or the names of the voters, or alleging that they lacked the constitutional qualifications, that the oath was not administered by clerks of the election acting as notaries public, or that the precincts named were within a city of 5,000 or more, was insufficient.

#### Elections—Conduct of Elections—Irregularities—Effect.

8. Qualified electors, whose ballots have been received and counted, should not be disfranchised because judges of election, by reason of an error in judgment, have not followed the correct procedure, where the real purpose of the law has been attained, and only qualified voters have voted.

**Elections—Contest—Pleading—Petition.**

9. Specifications of mere irregularities not affecting the result of the election, in a petition in an election contest, should be stricken out on motion.

**Elections—Contest—Burden of Proof.**

10. When an elector is permitted to deposit his ballot, the presumption is in favor of the legality of the vote; and the burden is on the attacking party to show lack of qualification or a forfeiture of the voter's right.

**Elections—Contest—Burden of Proof.**

11. Where an election is contested on the ground of illegal voting, the contestant has the burden of proving, not only that illegal votes were cast in sufficient number to change the result, but by whom and for whom they were cast.

**Elections—Contest—Review.**

12. The corrupt practices act of 1909 (Laws 1909, p. 15; Section 3486 et seq., L. O. L.), being full and complete in itself, and neither authorizing appeals in contests thereunder, nor referring to former provisions for appeals in election contests, no appeal in a contest under that act is authorized.

**Elections—Contest—Review—"Civil Case."**

13. A contested election proceeding is not a "civil case," within statutes authorizing appeals from judgments in civil cases.

From Multnomah: ROBERT G. MORROW, Judge.

Statement by MR. JUSTICE BEAN.

This is a special proceeding by George Tazwell against George N. Davis to contest the right of defendant to the office of circuit judge of Department No. 4 of the circuit court of the State of Oregon for the Fourth Judicial District, comprising Multnomah County. The trial court sustained a motion to quash the proceeding, and dismissed the petition. The contestant appeals. The election was held on the 5th day of November, 1912, at which George Tazwell, contestant, and George N. Davis, contestee, were candidates for the office of circuit judge. On the 21st day of that month contestant filed a petition for a re-

count of the ballots, and a notice of contest, naming the date for the hearing of the contest as December 6, 1912. The petition and notice were amended on November 30, 1912. Contestee moved to quash, for the reason that the court had no jurisdiction to try the proceeding.

AFFIRMED.

For appellant there was a brief over the names of *Mr. Bradley A. Ewers* and *Mr. Henry St. Rayner,* with an oral argument by *Mr. St. Rayner.*

For respondent there was a brief over the names of *Mr. A. E. Clark* and *Mr. M. H. Clark,* with an oral argument by *Mr. A. E. Clark.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. In the absence of any statutory proceeding, the only remedy in the nature of a contest known to the common law is *quo warranto,* or, in modern times, an action in the nature of *quo warranto.* The determination of an election contest is a judicial function only so far as authorized by the statute. The court exercising the jurisdiction does not proceed according to the course of the common law, but must resort to the statute alone to ascertain its powers and mode of procedure. 15 Cyc. 394; *Bradburn* v. *Wasco County,* 55 Or. 539, 541 (106 Pac. 1018) ; *Marsden* v. *Harlocker,* 48 Or. 90 (85 Pac. 328: 120 Am. St. Rep. 786) ; *Linegar* v. *Rittenhouse,* 94 Ill. 208, 213.

The questions for consideration raised by the motion to quash are: (1) Has the court jurisdiction of the subject-matter of a contest of election of the office of circuit judge? (2) Does the petition state facts sufficient to constitute a cause of contest of the office in question, and invest the court with jurisdiction of the subject-matter?

2. We will notice some of the provisions of the election laws of this State. Section 3422, L. O. L., provides that

the county clerk, immediately after making the abstract of votes given in his county, shall make a copy of each of said abstracts, and transmit it to the Secretary of State, and it shall be the duty of the Secretary of State, in the presence of the Governor, to proceed within 30 days after the election, and sooner if all the returns be received, to canvass the votes given for different officers, including judges of the circuit court and district attorneys; and the Governor shall grant a certificate of election to the person having the highest number of votes, and shall also issue a proclamation declaring the election of such person. Official canvass of the returns of the election of November 5, 1912, was made in conformance with the above section November 29, 1912.

Section 3524, L. O. L., directs that any action to contest the right of any person declared elected to an office, unless a different time be stated, must be commenced within 40 days after the return day of the election, unless the ground of such an action is for the illegal payment of money or other valuable thing. It is held that the return day mentioned in this section is the day on which the canvass begins, or after the official declaration of the result. 15 Cyc. 400; *Carlson* v. *Burt,* 111 Cal. 129 (43 Pac. 583) ; *Carbis* v. *Dale,* 23 Utah, 463 (65 Pac. 204) ; *Broaddus* v. *Mason,* 95 Ky. 421 (25 S. W. 1060).

Until the vote has been canvassed and the certificate has been issued by the proper officer, no cause can arise for a contested election, because until that time it cannot be known who is officially declared elected. *Barnes* v. *Gottschalk,* 3 Mo. App. 111. An election contest is a statutory proceeding to obtain a re-canvass of the votes cast at an election, as the result of which some person has been declared elected; and, where the court finds that no one has been declared elected, it has no jurisdiction of the contest, and cannot declare the contestant elected. 15 Cyc. 408; *Austin* v. *Dick,* 100 Cal. 199 (34

Pac. 655). This contest in the case at bar, having been initiated November 21, 1912, prior to the time of the official canvass of the votes by the Secretary of State, and before a certificate of election had been granted to either candidate, was premature. Evidently, as the Fourth Judicial District comprises but one county, the contestant refers in his petition to the returns made by the county clerk. We will pass this point, however, and will examine some of the other questions presented, on account of the importance of the matter involved.

3. The petition follows the form prescribed in Section 3537, L. O. L. It is maintained by contestant that the proceeding is authorized by Chapter 3, p. 15, of the Laws of 1909, popularly known as the corrupt practices act, being Section 3486 *et seq.*, L. O. L.

Section 3529, L. O. L., is as follows:

"Any elector of the State, or of any political or municipal division thereof, may contest the right of any person to any nomination or office for which such elector has the right to vote, for any of the following causes: 1. On the ground of deliberate, serious and material violation of any of the provisions of this act, or of any other provisions of the law relating to nominations or elections. 2. When the person whose right was contested was not, at the time of the election, eligible to such office. 3. On account of illegal votes, or an erroneous or fraudulent count or canvass of votes."

Section 3525 directs that an action or proceeding to annul and set aside the election of any person declared elected to an office must be made or filed in the circuit court of the county in which the certificate of his nomination as a candidate for the office to which he is declared nominated or elected is filed, or in which the incumbent resides.

Section 3531 enacts that, when the reception of illegal votes is alleged as a cause of contest, it shall be sufficient to state generally that in one or more specified voting

precincts illegal votes were given to the person whose nomination or election is contested, which, if taken from him, will reduce the number of his legal votes below the number of legal votes given to some other person for the same office; but no testimony shall be received of any illegal votes, unless the party contesting such election deliver to the opposite party, at least three days before such trial, a written list of the number of illegal votes, and by whom given, which he intends to prove on such trial. This provision shall not prevent the contestant from offering evidence of illegal votes not included in such statement, if he did not know, and by reasonable diligence was unable to learn, of such additional illegal votes, and by whom they were given, before delivering such written list.

Section 3532 provides, among other things, that any petition contesting the right of any person to a nomination or election shall set forth the name of every person whose nomination is contested, and the grounds of the contest, and shall not thereafter be amended, except by leave of the court; that on the filing of any such petition the clerk shall immediately notify the judge of the court, and issue a citation to the persons whose nomination or office is contested, citing them to appear and answer, not less than three nor more than seven days after the date of filing the petition; and that the contest shall take precedence over all other business. This section was not followed as to the issuance of a citation, but instead thereof a notice of contest was served. Inasmuch as contestee appeared, we do not deem this variation material.

The act of 1909 is general in its scope, particularly Section 3529, L. O. L., and we think authorizes any elector of the State, or of any political division thereof, to contest the right of any person to any office for which such elector has the right to vote, including the office of circuit judge. Prior to this the act of 1854 (Rev. St. 1854-

55, pp. 75, 76, §§ 41-46), being Sections 3426 *et seq.*, L. O. L., only made provisions for the contest of an election to any county, district, or precinct office, clearly pertaining to an office of the county, or to some subdivision thereof, and not to the office of circuit judge. The original petition was challenged by a motion, upon the ground, *inter alia,* that the petition did not state facts sufficient to constitute a cause of contest.

Section 3531, L. O. L., in substance, provides for amending such a petition by permitting the contestant to deliver to the opposite party, at least three days before the trial, a written list of the illegal votes, and by whom given, which he intends to prove on such trial.   Instead of following this method, the contestant, by leave of court, filed an amended petition, and by his brief and argument contends that this petition is sufficient.   Therefore we do not consider that the question of amendment is before this court.   The amended petition appears to have been drawn with care, and states the case as favorably to the contestant as the facts would warrant.

4. With this understanding we will consider the facts stated in the petition.   The petition contains three counts. After the formal allegations as to the election, the candidacy of the parties, and the qualifications of contestant for the office, stating that he is a qualified elector of the district, the petition alleges, in substance, that the board of canvassers of election returned that contestee, George N. Davis, received 10,793 votes for the office, and that contestant, George Tazwell, received 10,665 votes; that the respective clerks and judges of precincts numbered 1 to 182, inclusive, including precincts with half numbers, making a total of 191, made a false and erroneous count of the votes cast in such precincts, as the contestant is informed and believes, and therefore alleges that a large number of votes, to wit, 250 or more, were counted for contestee, George N. Davis, more than were voted

for him by the electors of such precincts; that the judges and clerks of election failed to count a large number of votes, to wit, 250 or more, that were cast by the electors in favor of contestant, George Tazwell; that contestant is informed and believes that in truth 10,543 votes were cast for George N. Davis, and no more, and 10,915 or more votes for contestant George Tazwell. It is not pointed out in which of the 191 precincts the contestant believes that the errors occurred. The petition was properly verified by the contestant to the effect that he believed it to be true; therefore the statement of contestant purports that he is informed and believes that an error occurred in the count. It is not claimed in the petition that any intentional error was made; nor is it shown what judges or what clerks made the error. While it is said that the count was fraudulent, no facts constituting a fraud are set forth.

McCrary, in his work on Elections (4 ed.), § 435, says:

"An application for a recount of the ballots cast at an election will not be granted, unless some specific mistake or fraud be pointed out in the particular box to be examined. Such recount will not be ordered upon a general allegation of errors in the count of all, and giving particulars as to none, of the boxes. These rulings were made in case of applications to the court to order a recount of ballots. * * But before ordering it the court held that there must be charges of mistake or fraud sufficiently precise to induce the court to entertain the complaint, and that a general allegation of errors believed to exist was not enough to authorize the perilous experiment of testing the election return by the result of a recount."

The first cause of contest is nothing more than an application for a recount. A careful examination of the same does not disclose that errors favorable to the contestant are any more likely to be found than errors in favor of the contestee. It is a mere application for a second chance on a recount of the votes in 191 precincts.

In counting the votes and making return thereof by the various judges and clerks of election, it is presumed that every official duty has been performed. In order for a recount or re-examination of their proceedings in the matter, issuable facts should be set forth in the petition indicating some specific mistake or fraudulent conduct, in order that the court may determine whether or not the same is sufficient. We think that the rule referred to in McCrary on Elections is a salutary one, and that it has usually been taken as a guide in cases of this nature. The first cause of contest states no traversible fact as to the grounds of contest, but states conclusions.

In the case of *Whitney* v. *Blackburn*, 17 Or. 564 (21 Pac. 874: 11 Am. St. Rep. 857), this court, in discussing the allegations contained in the 14 counts of the complaint, pages 575, 576, of 17 Or. (21 Pac. 877, 878: 11 Am. St. Rep. 857), of the opinion, said: "From the facts as set forth, it is manifest that they are not even reasonably or otherwise specific and certain, and that no one could be prepared to meet charges preferred in such a general way, or, if any irregularity or illegality in fact did lie concealed behind them, to avoid being taken by surprise. The wording of the notice indicates, as was asserted at the argument, that the plaintiff did not know of a single error or illegal vote cast, but stated the facts broadly and generally, because he was unable to point out or to be reasonably specific and certain as to any count in his notice, or as to any irregularity or illegality of whatever kind, upon which to rely, or other fact to sustain his claim. * * While it is the duty of courts to disregard mere technical rules or defects, and to liberally construe the law that the rights of the people may be preserved, and that no protection may be afforded to fraud, yet he who undertakes to contest the right of another to an office to which he has been declared to be elected, by a tribunal chosen by the people, ought to have

some well-defined 'cause', and to be able to state it with sufficient certainty as to notify or inform the other party of the substance of the facts upon which he relies to defeat his title, and to authorize the court to make the inquiry."

The Supreme Court of Indiana, in the case of *Borders* v. *Williams,* 155 Ind. 36 (57 N. E. 527), in regard to the allegations contained in the appellant's petition, at page 39 of 155 Ind., (at page 528 of 57 N. E.), said: "It is but tantamount to a general averment that the judgment of the county board of canvassers, pronounced upon the returns from the precincts, that the contestee had received the highest number of votes, was erroneous, which would be a mere conclusion, and present no question of fact; and, when pleaded, as in this case, as an independent ground of contest, we must regard it as insufficient and surplusage."

5. The second and third causes of contest are subject to much the same objection as the first. In the second cause of contest it is alleged, in effect, that there were divers illegal, spurious, and void ballots cast at the election in the precincts numbered in the first cause of contest, to wit, 200 or more, the exact number of which contestant is unable to state; and that they were erroneously and illegally counted for the contestee by the judges and clerks of election, in that there were various and divers illegal marks of identification and erasures made upon the ballots by the voters, so that the ballots could be readily identified. It is not alleged in what precincts the alleged illegal votes were cast, and the petition does not indicate in what manner any of the ballots were marked. This allegation may be true, yet the only identifying mark on any of the ballots may have been the name of a candidate voted for properly written thereon, or accidental blots. The allegation is a conclusion of law and, like the first cause of contest, contains no traversable

fact. It is not indicated how many ballots contained the alleged illegal marks, or how many contained the erasures. It is at most an application for a re-examination of the ballots in 191 precincts, in order, perchance, to find a fraction over one ballot to the precinct with some distinguishing mark thereon. It is not shown by the petition whether or not the marks were accidental or intentional. The petition is evidently based upon the supposition that the marks and erasures which usually occur upon ballots are to be found upon those in the several precincts. True it is alleged that the marks were illegal. This is but a legal conclusion. The pleading does not directly or indirectly indicate the character of a single mark, or where, or by whom, a single alleged illegal ballot was cast. It is attempted to embrace within the allegations of the petition all manner of marks and erasures, without specifying any particular kind, and without indicating who cast such ballots.

6. Section 3412, L. O. L., being part of the Australian ballot law adopted in this State, prohibits any elector from allowing his ballot to be seen by any person, with an apparent intention of letting it be known how he is about to vote, and from mutilating his ballot, or placing thereon any distinguishing mark whereby the same may be identified. It provides a penalty of not less than $50, nor more than $200, for a violation thereof. Any mark which the elector has a legal right to place upon his ballot, and which is necessary to indicate his choice, should not vitiate the ballot as bearing a distinguishing mark, although it might be possible thereby to distinguish such ballot from others, affording a means of identifying the voter. *Van Winkle* v. *Crabtree,* 34 Or. 462 (55 Pac. 831: 56 Pac. 74).

It is stated in 15 Cyc. 359 that "ballots should not be rejected on account of slight irregularity in the manner of marking, unless it is clear that the elector intended it

as a mark of identification. Consequently ballots containing blots or marks which were apparently made accidentally or carelessly and not deliberately should not be rejected as containing distinguishing marks; and the same is true of accidental ink blots on the back of a ballot. Marks on ballots, a reason for which is or may be suggested, consistent with honesty and good faith, will rarely be allowed to invalidate them, unless it appears that they were in fact used for corrupt purposes; but marks, for the existence of which no such reason can be suggested, will, if unexplained, generally be presumed to be for corrupt purposes."

7. For a third, separate, and further cause of contest it is alleged, in substance, that in 19 precincts, the numbers of which are given, the respective judges and clerks of the election erroneously counted 1,358 votes for the office for contestee, giving the number in each precinct; that such votes were illegally and erroneously counted, for the reason that the electors casting such ballots were not registered, and made no oath before any judge of the election of the respective precinct as to their qualifications to vote; that therefore the votes were illegal and void, and the result was thereby changed. No list of the number of illegal votes, nor of the names of the persons by whom cast, was contained in the petition or furnished the contestee at any time. What we have said in regard to the first cause of contest applies equally to the third. It will be observed that the illegality of the ballots mentioned is based upon the allegation that the electors, not being registered, did not take the required oath, as prescribed in blank A, Section 3449, L. O. L., before one of the judges of election. There is no intimation in the petition but that each of the electors casting these ballots was qualified to vote.

The qualification of electors was prescribed by Article II, Section 2, of the Constitution of Oregon, as it existed

prior to the amendment of November 5, 1912, which extended the right of suffrage to women. That organic law then provided that, in all elections not otherwise provided for by this constitution, every male citizen of the United States of the age of 21 years and upwards, who had resided in the State during the six months immediately preceding such election, and every white male of foreign birth of the age of 21 years and upwards, who had resided in the United States one year and in this State during the six months immediately preceding such election, and had declared his intention to become a citizen of the United States one year preceding such election, should be entitled to vote at all elections authorized by law. It is not stated in the pleading that the electors casting these ballots lacked any of these prescribed qualifications.

In order to prevent intimidation, fraud, bribery, and other corrupt practices at elections, and to prescribe a general rule for determining the right of persons to vote, Sections 3447 *et seq.*, L. O. L., provide for the registration of voters.

Section 3463, L. O. L., requires that, if it appears that the elector has not registered in the precinct in which he applies to vote, he shall be considered challenged, and shall be required to subscribe and swear to blank A, prescribed by Section 3449, filled out according to the facts, and to procure six freeholders of the county to take and subscribe to the second oath as specified in blank A. For this purpose judges of election are authorized to administer oaths. It is further provided that, in carrying out the provisions of this section, in cities having a population of 5,000 or more, as shown by the last preceding federal census, the elector offering to vote, and all the freeholders subscribing to the affidavits herein required, shall take such oath before, and the same shall be administered only by, the judges of election, or either

of them, in the precinct and at the time the elector offers to vote, and such affidavits shall not be received, if taken or made at any other time or place, or before any other officer than one of such judges of election. This provision is mandatory, and requires the election officers to strictly comply therewith.

8. For aught that appears, the prescribed oath may have been administered by clerks of the election, acting as notaries public. The main purpose of the law is to prevent persons who are not qualified electors from exercising the right of suffrage. It is not the purpose of the law that a large number of qualified electors who have cast their ballots, which have been received and counted by the election judges, should be disfranchised on account of the judges of election not following the correct procedure by reason of an error in judgment, when the real purpose of the law has been attained, and only qualified electors have been allowed to cast their ballots. *Lehlbach* v. *Haynes,* 54 N. J. Law, 77 (23 Atl. 422).

9. Specifications of mere irregularities not affecting the result of the election should be stricken out on motion. 15 Cyc. 406. It is not alleged in the third cause of contest whether or not these 19 precincts are within or without the City of Portland. We are asked to look at another separate part of the petition to aid this cause of contest, and to take judicial knowledge of the fact that these precincts are within a city having a population of 5,000 or more. In a city of 4,000 inhabitants, or in Multnomah County outside of the cities, the method apparently pursued would have been perfectly proper.

The judges of election are not required to have the qualifications of lawyers; and no stricter rule should be applied to their conduct relating to the mode of procedure, when they have obtained the correct result, than should be applied to the pleadings prepared by the learned counsel in this election contest.

10, 11. When an elector is permitted to deposit his ballot, the presumption is in favor of the legality of the vote; and the burden is on the attacking party to show a lack of qualification in the elector, or a forfeiture of his right. *Clark* v. *Robinson,* 88 Ill. 498; *Gumm* v. *Hubbard,* 97 Mo. 311 (11 S. W. 61: 10 Am. St. Rep. 312). Where an election is contested on the ground of illegal voting, the contestant has the burden, not only of proving that illegal votes were cast in sufficient number to change the result, but he must also show by whom and for whom they were cast. 15 Cyc. 416; *Lippincott* v. *Felton,* 61 N. J. Law, 291 (39 Atl. 646). In order to lay the foundation for making such proof, facts should be alleged in the petition in conformity with the statute. The contest in the case at bar was prematurely commenced. The petition does not conform with the requirements of the statute referred to, nor state facts sufficient to confer jurisdiction. It does not appear that any request or offer to further amend the proceedings was made. The time for hearing the cause as provided in Section 3532, L. O. L., had expired at the time the motion to quash the proceedings was allowed. There was no error in granting such motion.

12, 13. It is also contended by counsel for contestee that there is no right of appeal from the decision of the circuit court in a contest brought under the provisions of the act of 1909. The right of appeal from the decisions of inferior courts in election cases does not exist, unless it has been conferred by some constitutional or statutory provision. *City of Portland* v. *Nottingham,* 58 Or. 1 (113 Pac. 28). Statutes authorizing appeals to be taken from judgments rendered in civil cases do not apply to contested election proceedings under the statute, as they are not civil cases. 15 Cyc. 435; *French* v. *Lighty,* 9 Ind. 475; *Stearns* v. *Village of Wyoming,* 53 Ohio St. 352 (41 N. E. 578) ; *Simon* v *Portland,* 9 Or. 437; *Rogers* v.

*Johns,* 42 Tex. 339. This proposition is not controverted by counsel for contestant, but it is claimed that the right of appeal exists by virtue of Section 3429, L. O. L.

The Corrupt Practices Act of 1909 appears to be full and complete in itself, and covers numerous questions relating to elections and nominations. It makes no reference to the former act of which Section 3429 is a part, and makes no provisions for an appeal in cases of this kind. We do not deem it absolutely necessary to decide this question, as the result in this case would be the same, except as to the form; but we call attention to the same in order that the statute may be remedied by amendment. We think the point made by contestee in this respect is well taken. It is unnecessary to pass upon the other questions raised in this case.

The proceeding should therefore be dismissed; and it is so ordered.            DISMISSED.