# SPEAR v. MARSHALL.

No. 6001.   Decided May 9, 1938.   (79 P. 2d 15.)

*Robinson & Robinson,* of Provo, for appellant.

*I. E. Brockbank,* of Provo, for respondent.

LARSON, Justice.

The only question presented on this appeal from the district court of Utah county is the meaning of the expression, *"within forty days after the returns of the election are made,"* as used in section 25-14-4, R. S. Utah 1933. The case grows out of the following facts: On December 1, 1937, an election was held in the First municipal ward of Provo City for election of a member of the Board of Education, at which plaintiff, incumbent, and defendant were candidates. When the Board of Education met on December 6th and canvassed the returns of the election, the returns showed defendant received 290 votes and plaintiff, the incumbent, had received 289 votes. The returns of the judges showed also that there was one ballot unaccounted for, that is, the number of ballots received by the judges of election was greater by one ballot than the total number of ballots reported as unused, voted and spoiled ballots. Because of this discrepancy and the closeness of the election, the Board of Canvassers refused to declare anyone elected. On January 8, 1938, defendant filed an application in the district court of Utah county for a peremptory writ of mandamus to the Board of Education as a board of canvassers, and the clerk thereof, compelling them to issue to him a certificate of election. On January 22, 1938, the court issued such peremptory writ of mandate, and pursuant thereto the certificate of election was issued to defendant. On February 8th plaintiff commenced this action as an election contest. Defendant filed a demurrer and a motion to dismiss on the ground that the action was not commenced within forty days after the returns of the election were made as required by section 25-14-4, R. S. Utah 1933. The court granted the motion and dismissed the action; hence this appeal.

This court held in *Carbis* v. *Dale*, 23 Utah 463, 65 P. 204, that an election contest must be filed "within 40 days after the return day of the election," and that the *"return day of the election"* was the Monday following the election; that is, the date upon which the Board of Canvassers were to meet

to canvass the returns of the election. See, also, *Wilkinson* v. *La Combe,* 59 Mont. 518, 197 P. 836; *Day* v. *Jones,* 31 Cal. 261, 10 P. St. Rep. 261; *Carlson* v. *Burt,* 111 Cal. 129, 43 P. 583; *Tazwell* v. *Davis,* 64 Or. 325, 130 P. 400. Forty days after December 6th would be January 16th, as the final day for filing contest. This is not seriously disputed by appellant, but he contends that the statute now reads different from the one construed in *Carbis* v. *Dale,* supra, and therefore that ruling does not apply. The statute, Rev. St. 1898, § 917, construed in *Carbis* v. *Dale,* supra, reads:

"When an elector contests the right of any person declared elected to such office, *he must within forty days after the return day of the election,* file with the clerk of the district court of the county within or for which such office is to be exercised, a written statement, setting forth specifically: 1. The name of the party contesting such election," etc. (Italics added.)

The above statute is now section 25-14-4, R. S. Utah 1933, and is as follows:

"When an elector contests the right of any person declared elected to office, *he must, within forty days after the returns of the election are made,* file with the clerk of the district court of the county within or for which such office is to be exercised a verified written statement, setting forth specifically: (1) The name of the party contesting such election," etc.

We have italicized the phrase in which the different language is used. Appellant asserts that the phrase *"after the returns of the election are made"* has a different meaning from the expression *"after the return day of the election."* What are the returns of the election? When are they made?

The new Merriam-Webster Dictionary defines "returns" as "an account, or formal report, of an action performed, of a duty discharged, of facts and statistics and the like, as election returns." The statutes R. S. Utah 1933, in at least eleven sections of the election laws, use the term *"election returns"* in such way as to clearly import its meaning. Section 25-6-14 provides that "all the judges of election shall join in

making the return to the board of county commissioners." Section 25-6-32 provides that the judges shall certify the poll books and make the returns, and then enumerates the things they shall include in their returns. Section 25-6-34 states that the envelope or covers containing them shall be marked "Returns." Section 25-6-40 declares that the clerk or recorder must "produce the package containing the returns" before the proper body convened "for the purpose of canvassing the returns." The next section states that as soon as the returns are canvassed they must be filed away by the clerk. Chapter 7 of article 25 declares the returns must be canvassed on the Monday following the election, and, if the returns have not all been received, the board of canvassers must adjourn from day to day until they are received, but not exceeding seven days, when they must send a messenger to the judges for the returns of the election;

"The canvass must be made in public by opening the returns and determining therefrom [the returns] the vote for each person voted for. * * * In canvassing no returns must be rejected, if it can be ascertained therefrom the number of votes cast for each person; * * * a failure * * * [of the judges] to do or perform any other act in making up the returns that is not essential to determine for whom the votes were cast, is not such an irregularity as to entitle the board to reject the same, but they must be canvassed as are other returns." Section 25-7-4.

Succeeding sections of the chapter define and refer to the returns to be made on election of state officers.

It is clear therefore that the term "election returns" means the reports made to the board of canvassers of the number of votes cast for each candidate, or proposition voted upon, by those charged by law with the duty of counting or tallying the votes for or against the respective candidates or propositions. In no place is the word *"returns"* used to include the action of the canvassing board, nor its declaration of the result of the election, nor the issuance of certificate of election. It follows that "the returns of the election are made" when the reports from the judges

of election are submitted to the proper board, convened for the purpose of canvassing the returns to declare the result of the election.

We may add that the board of canvassers has no power, right, or authority to pass upon any question as to the fairness or legality of any election, or of any vote cast, the right of any person to vote, or the correctness of any returns made by the judges of election. As indicated in section 25-7-4, referred to above, and in section 25-7-12, the board of canvassers cannot pass upon or refuse to canvass any returns and declare the result thereof, or withhold any certificate for any defect or informality in the returns, as long as it can be determined therefrom how many votes were received by each candidate for the office as shown by the returns of the judges.

In this case the returns of the election having been made to the Board of Education, sitting as a board of canvassers, on December 6, 1937, and this action not having been commenced until February 8, 1938, more than forty days thereafter, the trial court properly dismissed the action.

Judgment is affirmed. Respondent to recover costs.

FOLLAND, C. J., and HANSON, MOFFAT, and WOLFE, JJ., concur.