SAMUELS v. ROBINS.

4-7866

192 S. W. 2d 109

Opinion delivered January 21, 1946.

Rehearing denied February 18, 1946.

G. P. *Casey,* John P. *Vesey* and *Graves & Graves,* for appellant.

Harry C. *Robinson,* Weisenberger & Pilkinton and John W. *Atkinson,* for appellee.

HOLT, J. The material facts in this case appear not to be in dispute. September 29, 1945, Monroe Samuels and 1601 other persons, who claimed to be qualified electors of Hempstead county and to be more than 15% of the qualified electors as shown on the poll tax records of said county, filed petition in the county court of said county, praying that an election be called in Hempstead county to determine whether license should be granted for the manufacture or sale, or the bartering, loaning or giving away of intoxicating liquors within said county, all alleged to be in accordance with the provisions of Initiated Act No. 1, adopted November 3, 1942 (Acts 1943, p. 998), and effective January 1, 1943.

October 8, 1945, there was a hearing before the county court to determine the sufficiency of the petition, *supra,* and the court found that more than 15% of the qualified electors of said county, as shown on the poll tax records, had signed the petition, that it was sufficient, and called an election to be held on November 6, 1945, in accordance with the prayer of the petition and the act, *supra.*

Appellees appeared and opposed the petition, excepting to the findings and judgment of the county court, and in apt time and by proper procedure appealed to the Hempstead circuit court.

At the beginning of the trial in the circuit court, it was stipulated that there were 4,980 poll tax payers in the county for the year 1943 as shown on the list of poll tax

payers filed in the county clerk's office, that there were 1,602 names signed on the petition, and that there were 2,500 persons over the age of 21 years from Hempstead county in the armed forces of the United States, on the date the petition was filed.

Appellants contended below, and now contend on this appeal, that in determining the sufficiency of their petition, the 2,500 persons in the armed forces should not be counted and that to do so would be contrary to the provisions of the act, *supra,* which required that their petition be signed by 15% of the qualified electors of said county "as shown on the poll tax records of the county," which would be 15% of 4,980, or 747. Appellees, on the other hand, contended below, and argued here, that those in the armed forces, *supra,* under the provisions of said act, must be added to the poll tax payers' list of 4980, *supra,* making a total of 7,480, 15% of which would be 1,122.

The circuit court found that under the act, *supra,* the number of qualified electors signing the petition in question must be a number equalling 15% of 7,480, or 1,122, which is 15% of the poll tax payers of the county for the year 1943, according to the official list in the county clerk's office, and in addition 15% of all persons from Hempstead county over the age of 21 years who were in the armed forces of the United States on September 29, 1945, when the petition was filed. In other words, (quoting from the judgment) "That before the petitioners (appellants) can prevail and before the election can be called under the petition, the number of qualified electors signing the petition must be not less than 15% of the number on the poll tax list and the number in the armed services of the United States from Hempstead county, which would be 15% of 7,480, which would be 1,122, and that only 1,056 qualified electors having signed the petition, the petition is insufficient."

The judgment and order of the county court was set aside and appellants' petition dismissed. This appeal followed.

The primary question presented, and which we think is decisive of this case, is: What was the criterion fixed in Act No. 1, *supra,* to determine the number of qualified electors that must sign the petition in question to authorize the calling of the election? Is the official poll tax list in the clerk's office the criterion or is the criterion the number "as shown on the poll tax records of the county" added to the number of persons over the age of 21 years from Hempstead county who were in the armed forces of the United States on the date the petition was filed, September 29, 1945?

Section 1 of said act provides: "When fifteen per cent (15%) of the qualified electors, as shown on the poll tax records of the county shall petition the County Court of any county within this State, praying that an election be held in a designated county, township, municipality, ward or precinct, to determine whether or not license shall be granted for the manufacture or sale, or the bartering, loaning or giving away of intoxicating liquor within the designated territory, the County Court, within ten (10) days thereafter, (the County Court shall be open at all times for the purposes of this Act) shall give a public hearing to determine the sufficiency of the petition; and if it be found that fifteen per cent (15%) of the persons who have paid their poll taxes for the year, making them qualified voters at the time the petition is filed, (or qualified electors in case the qualifications for electors should be changed by Constitutional Amendment) have signed said petition, said County Court shall order a special election to be held in such county, township, municipality, ward or precinct, to be affected thereby, for the sole and only purpose of voting on the question presented by the petition."

Amendment 36 to the Constitution of Arkansas, adopted November 7, 1944, provides: "Any citizen of Arkansas, while serving in the armed forces of the United States, may vote in any election, without having paid a poll tax, if otherwise qualified to vote in any such election."

It will be observed that the first sentence of § 1 of the act above contains two clauses separated by a semi-colon, the first clause in plain and certain language fixes the criterion in determining the number of qualified electors that must sign the petition in order to call an election to be 15% "of the qualified electors as shown on the poll tax records of the county." That number here is conceded to be 4,980. Does the language in the second clause change this criterion? We do not think it does.

One of the requirements for voting, as applied to all citizens, at the time Act No. 1, *supra,* became the law, was the payment of a poll tax, and the official poll tax list was fixed as the criterion by the law making body. Amendment 36, *supra,* relieved all citizens while serving in the armed services of the United States of the requirement of paying a poll tax in order to vote in any election. This amendment in no way affects the provisions of said act as to the number of signers on the petition necessary to call the election. The poll tax requirement is still applicable to all other citizens, and we hold that the official poll tax list is the criterion as fixed in said act, to determine the qualified electors who must sign the petition in question. This act does not deprive those in the armed forces of voting in the local option election here. Such was the effect of our holding in the recent case of *Shay* v. *Welch, ante,* p. 519, 191 S. W. 2d 253. We there held: (Headnote 1) "Electors who may be absent from home and in the armed services of the United States are not deprived from voting in a local option election by Initiated Act No. 1 of 1942; it is the war that rendered their absence from home necessary and not the Initiated Act."

The Legislature, or the people, by right of initiative as here, could make the official poll tax list the criterion for determining the number of qualified electors who must sign the petition for calling the election.

We have heretofore upheld this principle of law in election contests. In *Vance, et al.,* v. *Austell, et al., Futrell, et al.,* v. *Austell, et al.,* 45 Ark. 400, this court said: "Section 1165 of Mansfield's Digest, which provides that, for the purpose of ascertaining the number of quali-

fied voters of any county, and the lawful majority necessary to authorize the change or removal of any county seat, the county court shall be governed by the number of persons liable to pay a poll tax as returned upon the assessor's books, is not in conflict with the Constitution of the State, and all doubts as to the power of the Legislature to establish the rule prescribed in said section are to be resolved in favor of the statute. . . . And it has prescribed the minimum vote necessary to effect a removal, viz: a majority of those participating in the election. . . . The assessment list had been delivered in the clerk's office, on the first Monday of June, as required by § 5672, Mansf. Dig. And being so returned, it was a finality for all purposes connected with a county seat election. Ib., 1156. It matters not that there were other persons in the county who were liable to assessment for a per capita tax and whose names were afterwards added by the assessor; nor that some of the persons included in the list were not, in fact, legal voters. The statute has adopted the list for convenience as a criterion to determine the result, under the notion that it would show approximately the number of voters living in the county. It would destroy the certainty and the value of such a criterion to allow the courts, in the event of a contest, to inquire into the completeness of the list, or to enter upon an investigation into the qualifications of electors who did not offer to vote." This case was approved and reaffirmed in *Velvin* v. *Kent,* 198 Ark. 267, 128 S. W. 2d 686.

This act, *supra,* might have fixed instead of 15%, 20% or 50% of the poll tax list, as the criterion, or in fact some other criterion than the official poll tax list.

Hempstead county who had paid a poll tax for the year 1943, according to the official poll tax list filed by the collector in the office of the county clerk, and 15% of this number is 747, it was only necessary for the petition to contain the names of 747 qualified electors of the county. It is further conceded that the petition contained 1,602 names. In effect, appellees challenged 615 names on the

petition which left 987 signers on the petition who were unchallenged, or 240 more than the required 747. As noted above, the trial court found that the petition was signed by 1,056 qualified electors of the county.

For the error indicated, the judgment is reversed and the cause remanded with directions to proceed in a manner consistent with this opinion.

McFADDIN, J., not participating.