TOLLETT. *v.* KNOD.

4-8132                                          197 S. W. 2d 744

Opinion delivered December 2, 1946.

782

Byron Goodson, for appellant.

F. B. Clement, for appellee.

ED. F. McFADDIN, Justice. This appeal challenges a circuit court judgment approving a county court order which called a local option election in Sevier county, Arkansas, under the provisions of Initiated Act No. 1 of 1942 (Acts 1943, p. 998). This act has been before this court in the following cases: *Sturdy* v. *Hall*, 204 Ark. 785, 164 S. W. 2d 884; *Yarbrough* v. *Beardon*, 206 Ark. 553, 177 S. W. 2d 38; *Van Gundy* v. *Caudle*, 206 Ark. 781, 177 S. W. 2d 740; *Lienhart* v. *Bruton*, 207 Ark. 536, 181 S. W. 2d 468; *Mondier* v. *Medlock*, 207 Ark. 790, 182 S. W. 2d 869; *Scaramuzza* v. *McLeod*, 207 Ark. 855, 183 S. W. 2d 55; *Winfrey* v. *Smith*, 209 Ark. 63, 189 S. W. 2d 615:

*Evans* v. *Hunter,* 209 Ark. 234, 189 S. W. 2d 913; *Hughes* v. *State,* 209 Ark. 125, 189 S. W. 2d 713; *Shay* v. *Welch,* 209 Ark. 519, 191 S. W. 2d 253; *Samuels* v. *Robins,* 209 Ark. 614, 192 S. W. 2d 109; *Shoop* v. *State,* 209 Ark. 498, 192 S. W. 2d 122.

In the case at bar, on September 16, 1946, the appellees (sometimes herein referred to as "petitioners") filed in the Sevier County Court a petition, purporting to contain more than 15 per cent of the qualified electors in said county, and praying that a county-wide local option election be called as provided by said Initiated Act No. 1. After notice and appearance of remonstrants (appellants here) and hearing, the county court granted the petition, and called the election (which seems to have been postponed pending the outcome of this appeal). The remonstrants appealed to the circuit court, and the cause was tried there *de novo,* beginning on October 12, 1946, and concluding on October 19th.

The petition of the appellees consisted of 41 separate divisions or parts, each numbered for identification, but altogether making one petition. We shall refer to these parts as "divisions." The circuit court found: that there were 2,875 valid poll tax receipts issued as shown by the records of the county; that 15 per cent. of that number was 432; that the petition contained 868 valid signatures; and on these findings, the circuit court held the petition to be sufficient, and affirmed the county court order calling the election.

From an unavailing motion for new trial, the remonstrants have appealed to this court, and present here these seven contentions as alleged reversible errors:

1. The circuit court allowed the appellees to present additional testimony after they had rested their case.

2. The circuit court refused appellants' motion for continuance.

3. Nine divisions of the petition (which nine contained a total of 231 names) were held by the circuit

court to be sufficiently .verified by the canvasser, even though appellants claimed otherwise.

4. Five divisions of the petition (which five con-. tained a total of 155 names) were held by the circuit court to be valid, even though no legal voting precinct appeared opposite each name.

5. Three divisions of the petition (which three contained a total of 41 names) were held by the circuit court to be valid, even though these three divisions were filed after the giving of the statutory notice for hearing in the county court.

6. Seven divisions of the petition (which seven contained a total of 145 names) were held by the circuit court to be valid, even though no canvasser personally appeared in the circuit court to testify as to the circulation and signing of the divisions.

7. If all of appellants' said contentions, numbered three to six, be sustained, then the remaining signatures unchallenged are less than the 15 per cent. required by law.

We have listed all of appellants' contentions, but we find it necessary on this appeal to consider only contentions 1, 2, 3 and 7, as above listed.

### Appellants' Contention No. 1

The hearing in the circuit court began on October 12th. On that day the appellees introduced the 41 divisions of the petition, and the count as to the total number of signatures on the petition, and the poll tax records showing the total number of legal voters of the county. Thereupon the appellees rested. Then the remonstrants, after an unavailing motion to dismiss, began their attacks on the various divisions of the petition, and on the poll tax records, and on the signatures and qualifications of some of the individual signers. When the remonstrants rested, the record shows the following to have occurred:

"At this time, the Court stated that he would check the signers of the petitions against the poll tax records

that had been offered in evidence to determine the number of qualified electors signing the petition; that it would take several days for the Court to complete that investigation, but that he would decide the case and render judgment on the 19th day of October, 1946, to which date this cause was continued.

"On this the 19th day of October, 1946, the Court being in session and both parties being present in court, the petitioners asked permission to introduce further testimony in support of their petition, which the Court granted over the objection of respondents, . . ."

It is thus clear from the record that on October 19th, when the court reconvened, the appellees asked—and received—permission to reopen the case and introduce additional testimony. This request was made and granted before the circuit court had announced any decision in the case. The appellants contend that the circuit court committed fatal and reversible error in thus allowing the appellees to introduce additional evidence on October 19th. We hold that the trial court acted within its discretion in reopening the case. See *Turner* v. *Tapscott,* 30 Ark. 312; *Evans* v. *Rudy,* 34 Ark. 383; *L. R. & F. S. R. Co.* v. *Finley,* 37 Ark. 562; *Oak Leaf Mill Co.* v. *Cooper,* 103 Ark. 79, 146 S. W. 130; *National Life & Accident Co.* v. *Alexander,* 193 Ark. 185, 98 S. W. 2d 316. In 53 Am. Juris. 109 there are these statements apropos the situation here:

". . . it is within the sound discretion of the trial court in the furtherance of the interests of justice after the parties have rested to permit either party to reopen a case, for the purpose of receiving further evidence. . . . An appellate court will interfere only where there has been a clear abuse of discretion. Even where a case tried before the court has been continued to the next term after the evidence has been closed, the court has been held entitled to receive evidence at the next term to supply the deficiency."

There is no showing that the trial court abused its discretion in the case at bar; so appellants' contention No. 1 is denied.

## Appellants' Contention No. 2

When the circuit court granted the appellees' request for permission to introduce additional testimony (as just discussed above), the appellants not only objected, but immediately—and before such evidence was introduced—asked for a continuance on the grounds of surprise. The court overruled the motion for continuance. The petitioners then had 19 of the canvassers testify that each such canvasser had circulated the division or divisions of the petition sworn to by such canvasser; and that the signing had been in the presence of the canvasser, and that the signer was the holder of a valid poll tax receipt. See *Winfrey* v. *Smith, infra.* Then several witnesses testified as to the identity of certain signers: for instance, as where one lady signed her name as "Mrs. J. E. Mize," and it was shown that she was the same person as "Mrs. Stella Mize," to whom a poll tax receipt had been issued. There were less than 20 efforts at such identification. Then the appellees rested; and appellants proceeded with the trial, and offered witnesses, and never renewed their motion. Even if the motion had been renewed, there is no showing that the appellants were surprised. The calling of the canvassers and the proof of identity of signers could not have been an angle of the case in which the respondents could have been surprised. Under the issues stated, the trial court did not abuse its discretion in denying the motion for continuance. In *Banks* v. *State,* 185 Ark. 539, 48 S. W. 2d 847, 82 A. L. R. 1051, Chief Justice HART cited many cases to sustain this statement:

"The granting or refusing of continuance, is within the sound legal discretion of the (trial) court, and this court will not interfere where there has been no abuse of that discretion."

## Appellants' Contention No. 3

Nine divisions or parts of the petition (being divisions numbered 8, 19, 24, 26, 34, 39, 45 and 59) contained a total of 231 names. Appellants claim that each of these nine divisions is fatally defective, because of improper

verification by the canvasser. In discussing this contention, we are not now deciding that the petition under Initiated Act No. 1 of 1942 has to be verified as is required for the usual initiative and referendum petitions. Written verification by the canvasser is not the only way of establishing the fact of signing. See *Winfrey v. Smith, infra.* Each of the nine divisions was circulated by a canvasser; and in each division, following the signatures of the purported poll tax holders, there is a page on which the canvasser made an affidavit. Division No. 45, purporting to be signed by ten voters, is typical; so, we copy in full the affidavit of division 45:

"State of Arkansas
"County of Sevier

"I,                    of                    being first duly sworn, state that

1. Mrs. A. L. Brown
2. A. L. Brown
3. J. W. Cherry
4. T. Lawson
5. C. E. Hendrix
6. Mrs. C. E. Hendrix
7. Mr. E. P. Casteel
8. Lula M. Cason
9. Grady Cason
10. H. B. Crews

signed the foregoing petition, and each of them signed his or her name thereto in my presence. I believe that each one has stated his or her name, residence, postoffice address and voting precinct correctly, and that each of them is a legal voter of Sevier county, Arkansas.

"Subscribed and sworn to before me this 10th day of September, 1946.

"Lilla S. Hendrix,                    Russell Armer

    Notary Public                    Canvasser.

"SEAL"

This particular affidavit was executed before a notary public, but one of the others attacked in the case at bar was executed before a justice of the peace, who did not affix any seal.

A. Appellants say that the failure of the justice of the peace to affix a seal rendered the entire affidavit a nullity; and they cite § 2 of Act 182 of 1939, which provides:

"The seal, herein provided for justices, shall be affixed to each acknowledgment to any and every instrument for the conveyance of land or an estate therein, which the justice is by law authorized to execute or sign."

Assuming—but not deciding—that Act 182 of 1939 is constitutional, still we point out that it cannot benefit the appellants here, because the act only requires the seal to be affixed to a conveyance affecting land, and the affidavit here is not such a conveyance.

B. The appellants say that the name and address of the canvasser does not appear in the affidavit in the blanks of the first line preceding the words "first duly sworn . . ." It is evident that the canvasser failed to insert his name and address; but the affidavit is fully complete, even with the name and address omitted from the designated place. Furthermore, what we say in paragraph (C) below will apply likewise to this point.

C. Appellants contend that the canvasser signed in the wrong place: that is, he should have signed *before* the line beginning "subscribed and sworn . . ." rather than on the line after the quoted words. This contention has given us serious concern in view of § 5215, Pope's Digest, which says:

"Every affidavit shall be subscribed by the affiant, and the certificate of the officer before whom it is made shall be written separately, *following the signature of the affiant.*" (Italics our own.)

But we have reached the conclusion that, even if the statute is mandatory instead of directory, and even if

this statute applies to a case like this, and even if verification of the petition under Initiated Act No. 1 of 1942 is required—none of which contentions we decide—nevertheless, only 76 of the 231 names should be taken from the petition on this objection. This result is reached here because in *Winfrey* v. *Smith*, 209 Ark. 63, 189 S. W. 2d 615, we held that the canvasser could verify the petition in open court. Such verification in open court was made in the case at bar by the canvassers who circulated six of the nine divisions here challenged, and these six divisions (being all the nine challenged except 19, 23 and 59) contained a total of 155 names, which would remain valid even if appellants' third contention was good against the remaining 76 names. The effect of this holding is to make 155 names good against appellants' challenge, and such result makes it unnecessary for us to consider appellants' fourth, fifth and sixth contentions.

### Appellants' Contention No. 7

This deals with the arithmetic in the case; and to dispose of appellants' entire contention, we list the figures as the appellants claim the circuit court should have found and decided. These figures do not agree with those of the circuit court, but they do reflect appellants' argument. Say the appellants:

"It is shown by the record that a total of 3,109 persons have paid their poll taxes in Sevier county for the year 1945. 15 per cent. of that number would be a total of 466. A total of 1,016 names appear on the petition and the various divisions thereof. Of that number it is submitted that on the record made by the respondents, without taking into consideration the additional number stricken by the court, 539 names have not been properly proven and verified. Deducting that number from the number originally appearing, there remains a total of 477. Of that number, a total of 22 names, not included among the 539 persons otherwise challenged by the respondents in this brief, were stricken by the court. . . . Thus it is clear that 15 per cent. of the qualified electors of Sevier county did not sign and submit the petition. . . ."

In other words, here is the appellants' arithmetic:

Total number of names on appellees' petition............ 1,016

Total number of names that would be removed if appellants were correct in their contentions 3, 4, 5 and 6.................................................................................. 539

Total number of names remaining..................................... 477
Less names actually removed by the court....................... 22

Final remainder ................................................................ 455
Necessary to have required 15 per cent............................ 466
Appellees are minus......................................................... 11

Now, when we hold—as we did in disposing of appellants' third contention—that 155 of the challenged names were good, such holding changes the numerical result of the above tabulation from a minus eleven to a plus 144 for appellees. This results in an affirmance of the judgment of the circuit court without considering appellants' contentions 4, 5 and 6.

It is made to appear to this court that there is a good cause for an immediate mandate in this case (see § 2777, Pope's Digest), so it is ordered issued.

Affirmed, and immediate mandate ordered issued.