BONDS *v.* ROGERS.

4-9537                                    241 S. W. 2d 371

Opinion delivered July 9, 1951.

*S. L. Richardson, George H. Steimel* and *W. J. Schoonover,* for appellant.

*George M. Booth,* for appellee.

Ed. F. McFaddin, Justice.   A local option election, called pursuant to Initiated Act No. 1 of 1942, was held in Randolph County on May 11, 1950, to decide whether the manufacture or sale of intoxicating liquors would be legal in that County.

On the face of the returns, the County voted "dry"— *i. e.,* against the manufacture or sale of intoxicating liquors.   Appellants contested the election in the County Court and in the Circuit Court, and now appeal from the Circuit Court judgment which found that a majority of those voting in the County had voted against the manufacture or sale of intoxicating liquors.   After a thorough, painstaking count of the challenged votes, the Circuit Court found that a majority of the legal votes were in favor of the "drys"; and the correctness of such count is not challenged on this appeal.   Rather the contestants (appellants here) insist for reversal on the points now to be discussed.

I.   *No Election Held in One Township.*   The election called was County-wide; but for some unexplained reason, the polls were never opened in Butler Township, one of the political townships in Randolph County.   Appellants claim that the failure of the officials to open the polls in

the one township rendered void the entire voting in the other twenty-odd townships. The motion and the Circuit Court's ruling thereon are as follows:

"The contestants request the Court to hold that the purported local option election, of May 11, 1950, is null and void, and that, under the undisputed evidence, no election was held in Butler Township, and for that reason there was no County-wide election held, as ordered by the County Court.

"BY THE COURT: Suppose all of the Judges and Clerks failed to appear, could the voters present go ahead and hold the election? There is nothing to show that the ballots·were withheld. The Court thinks, if any voters appeared at the polls they had a right to go ahead and hold the election. The motion will be overruled."

While it is not ·shown how many qualified voters there were in Randolph County, it is clear that in excess of 2,800 legal votes were cast in this election. Likewise, while it is not shown how many qualified voters there were in Butler Township, appellants say in their brief that there were 42 such voters. The result of the appellants' argument is that 42 voters, by failing to hold an election in one township, could thereby defeat the balloting of 2,800 voters in the other townships of the county. If that argument be true, then by like symbol, one county, by failing to vote, could defeat an entire state-wide election; and one state, by failing to vote, could defeat an entire national election. We mention this to show the result that would follow if we adopted appellants' argument.

Apparently the voters in Butler Township were not interested in the election. Since there is no showing in the case at bar (a) that anyone in Butler Township was deprived of a desired right to vote, or (b) that the opening of the polls was suppressed by force or fraud, we conclude that the appellants' argument on this point is without merit. See *L. & N. R. R.* v. *Davidson County* (Tenn.), 1 Sneed 637, 1. c. 693.

II. *Counting of the Vote by the Election Officials at Each Polling Place.* When the polls closed, the Judges

and Clerks at each polling place proceeded to count the ballots, tabulate the results, and make returns to the County Election Commissioners, as prescribed by the General Election Law—*i. e.,* § 3-1001, *et seq.,* Ark. Stats. Appellants strenuously insist that the Judges and the Clerks at the respective polling places had no right to count the ballots and tabulate the results: instead—say appellants—the said Judges and Clerks should have forwarded the unopened ballot boxes to the three County Election Commissioners who should have counted the ballots in the first instance. This contention of appellants makes necessary a study of certain language in Initiated Act No. 1 of 1942[1] (as now found in § 48-802, Ark. Stats.), which reads:

"Said election shall be held on the day designated in said notice in conformity with the general election laws of the State, and shall be conducted by the Election Commissioners in the same manner as General Elections are conducted, and the same responsibility shall rest upon all election officials conducting said election as in conducting General Elections, and only qualified electors shall be eligible to vote therein. *All returns from said election shall be sealed up and forwarded immediately to the County Election Commissioners of the proper county. Said Election Commissioners shall count the votes and deliver their certificate declaring the result of said election,* together with the election returns, *within three (3) days after the date of said election,* to the County Clerk of said County."

We have italicized certain language to emphasize appellants' contention which hinges on the words, "All returns . . . shall be . . . forwarded . . . to the County Election Commissioners (who) . . . shall count the votes." Because of such language appellants urge that the Judges and Clerks, at the respective polling places, had no right to count the votes. There are two reasons why we do not agree with the appellants' conten-

---

[1] This Act has been considered by us in a number of cases, some of which are listed in *Tollett* v. *Knod,* 210 Ark. 781, 197 S. W. 2d 744; but in none of our cases have we considered the points under discussion in this case.

tion; in the first place, the Statute, as previously copied, says:

". . . the same responsibility shall rest upon all election officials conducting said election as in conducting General Elections, . . ."

Section 3-1002, Ark. Stats., in prescribing the responsibilities of Judges and Clerks in General Elections, says:

"After the closing of the polls, the judges of election shall proceed to count the ballots deposited in the ballot-box, . . ."

Thus the General Election Law requires the Judges and the Clerks at each polling place to count the ballots. We hold that the Initiated Act No. 1 of 1942 (§ 48-802, Ark. Stats.) imposed the same duty on the Judges and Clerks as provided by the General Election Law—*i. e.*, to count the ballots.

In the second place, the said Initiated Act No. 1 says, "All returns . . . shall be forwarded immediately to the County Election Commissioners." Webster's New International Dictionary says of "election returns":

"An account, or formal report, of an action performed, of a duty discharged, of facts or statistics, and the like; . . ."

Throughout our Election Laws the word, "returns," means the report made by the polling officials to the higher authority as to the number of votes cast for each candidate, or the number of votes cast for or against the proposition voted on. The word, "returns," in Election Laws, connotes that the Judges and Clerks at the respective polling places are, in the first instance, to count the ballots and tabulate the results. Cases from other jurisdictions are persuasive in this regard. See *Spear* v. *Marshall*, 95 Utah 62, 79 Pac. 2d 15; and *Carlson* v. *Burt*, 111 Calif. 129, 43 Pac. 583. In 29 C. J. S. 331, "Elections," § 229, in discussing "returns," the text states:

"It is the continuing duty of the election officers to make a proper return of the result of the election. . . ."

To the same effect see 18 Am. Jur. 345, "Elections," § 251.

We therefore conclude that it was the duty of the Judges and Clerks at the respective polling places to count the ballots and make returns; and that when the Initiated Act No. 1 says: "Said Election Commissioners shall count the votes," it means that the County Election Commissioners shall canvass the result, just as in General Elections. We conclude that the appellants' contention is without merit.

III. *Conduct of County Election Commissioners.* Section 2 of said Initiated Act No. 1 (being now § 48-802, Ark. Stats.) requires the County Election Commissioners to certify the election result "within three (3) days after the date of said election." The three Election Commissioners of Randolph County were Messrs. Brown, Hollowell and Grier, with the first named being the Chairman. The election was held on Thursday, May 11th; and two of the Commissioners (Messrs. Brown and Hollowell) met on Saturday, May 13th, and performed the duties as required by Statute. Mr. Grier left the County on a short trip at 6:00 A. M., Saturday, May 13th, and did not return until several days thereafter.

(a) Appellants' first contention is that because of the absence of Mr. Grier from the meeting on May 13th, the other two Election Commissioners were powerless to act and their actions were not only void, but also destroyed the integrity of the ballots. We reject appellants' said contention. Section 3-602, Ark. Stats., says:

"Each Commissioner shall have one vote, and two shall constitute a quorum, and the concurring votes of any two shall decide all questions before them."

It was Mr. Grier's duty to ascertain when the Commissioners were to meet. His trip was for his own pleasure; and he must abide the action of the two Commissioners who met and performed the duty imposed on them.

(b) Appellants make another contention: Section 2 of said Initiated Act No. 1 (§ 48-802, Ark. Stats.) further provides:

"Upon petition of twenty-five (25) interested legal voters in the territory affected, within ten (10) days after the date of said election, the Election Commissioners of said County shall immediately recount the votes and declare the result of the election as determined by such recount."

There was such a petition for recount filed in the case at bar; and on May 19th, Messrs. Brown and Hollowell—being a majority of the Election Commissioners—met in the vault of the County Clerk's office and made the recount required. Because Mr. Grier was absent from such meeting, appellants assail the integrity of the ballots. We say, again, that two Commissioners constituted a quorum. There was evidence that Mr. Grier was notified of the meeting. He could not, by his absence, defeat the majority from complying with the statutory requirements.

(c) Appellants make a further contention: because of the absence of Mr. Grier, the other two Commissioners secured Mr. Pace to assist them in the tabulation of the results of the recount; and appellants say that the participation of Mr. Pace was a fatal error. Under the facts in this case we hold that the presence of Mr. Pace did not destroy the integrity of the ballots.

We have examined the appellants' other contentions and find them to be without merit. Therefore, the judgment of the Circuit Court is in all things affirmed.